**Guy K. DRIGGS and Maxine Driggs, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. CA3–86–0323–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 23, 1989.

G. Tomas Rhodus and Brett B. Flagg of Brice & Mankoff, Dallas, Tex., for plaintiffs.

Joseph A. Pitzinger, III and Christopher S. Cole, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

In this income tax refund suit the court is asked to decide a question of apparent first impression: whether 26 U.S.C. § 174 imposes a reasonableness limitation on deductible research and experimentation ("R & E") expenses. Finding no such limitation, the court denies defendant's motion for judgment notwithstanding the verdict or, alternatively, to amend the judgment.*

I.

This is a tax refund suit by plaintiffs, Guy K. and Maxine Driggs ("taxpayers"), seeking to recover R & E expenses that the Internal Revenue Service ("IRS") disallowed on the taxpayers' 1981 federal income tax return. The taxpayers timely filed their 1981 return and paid $1,332.00 in federal income tax. Plaintiff, Guy K. Driggs ("Driggs"), is a physician. He offset certain R & E expenses incurred by Typesetting Systems Research Joint Venture ("TSR"), in which Driggs was a partner, against income from his medical practice. TSR had hired Typography Systems International, Inc. ("TSI"), of which Driggs was a shareholder, to conduct research and experimentation towards the production of computer software that was intended to enhance greatly the typesetting process. TSR agreed to pay TSI $895,000 for TSI's best efforts to produce two software packages within a specified time period. The amount that TSR spent on R & E exceeded its income, and TSR incurred a loss. Driggs deducted his pro rata share of the loss on his 1981 federal income tax return.

The IRS thereafter audited TSR and disallowed the loss taken by the taxpayers. The IRS determined that TSI was a sham for federal tax purposes and that the research agreement between TSR and TSI was not a transaction entered into for profit. Because TSI was considered a sham, the R & E expenditures deducted by TSR in 1981 were not qualified R & E entitled to treatment as an expense under 26 U.S.C. § 174. In turn, the taxpayers were not entitled to deduct the TSR loss against their ordinary income.

Based upon the disallowance of the deduction, the IRS assessed the taxpayers a

---

* Although the motion presents grounds other than the one decided here, the other issues do not merit additional writing by the court and the motion is otherwise denied.

$65,116.90 income tax deficiency plus accelerated statutory interest. The taxpayers paid the sum of $102,735.12—which represented payment in full—and filed this refund action. The jury disagreed with the government's assessment and found that TSI was not a sham and that the R & E transactions were legitimate. However, notwithstanding evidence that TSR spent $1.3 million on R & E over a four-year period, the jury found that only $895,000 of that sum was reasonably incurred. The court specified a deadline for filing post-verdict motions. After no motion was filed by the government, the court entered judgment in favor of the taxpayers for $102,735.12 plus statutory interest.

The government now contends that even if the court rejects its other arguments in support of judgment NOV, the court should at least reduce the amount of the judgment to reflect that only the sum of $895,000 of the $1.3 million in R & E expenditures was reasonably incurred. The taxpayers respond that the jury may have been confused in its computation of the R & E expenditures in question and, in any event, that § 174 does not limit the R & E deduction to those expenditures reasonably incurred.

## II.

Neither the taxpayers nor the government has located any precedent for deciding the question whether § 174 imposes a reasonableness standard. Where this court is unfettered by a higher court's interpretation of a statute, it seeks to determine the intent of Congress from the statutory language that the legislative branch employed. It is the intent of Congress—not the choice of a judge—that must control. Because the plain meaning of the statute's words can control the determination of legislative purpose, *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 2583, 96 L.Ed. 2d 510 (1987), the court begins with the language of § 174 itself. *See Cavazos v. Simmons*, 90 B.R. 234, 237 (N.D.Tex.1988) (starting point in statutory construction is language of the statute itself); *Vernon Savings & Loan Ass'n, FSA v. Commerce Savings & Loan Ass'n*, 677 F.Supp. 495,

497 (N.D.Tex.1988) (same) (citing *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986)).

Section 174(a)(1) provides:

A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.

On its face, this statutory provision contains no limiting language concerning the deduction of research or experimental expenditures except that they must be "paid or incurred by [the taxpayer] during the taxable year" and must be paid or incurred "in connection with his trade or business." *Id.* Indeed, the statute's plain language has been interpreted to mean that *all* costs incident to the development of an experimental or pilot model are classified as research or experimental expenditures. *See, e.g.*, Mertens, *Law of Federal Income Taxation* § 25.44 (1988). The statute thus imposes a definitional type of limitation: that is, if the expenditure falls within the definition it is deductible, regardless of amount. The government thus has no basis for engrafting a reasonableness standard on § 174 that Congress did not itself provide.

By contrast, when Congress intends in the Internal Revenue Code to limit deductions not only definitionally but also by amounts within a defined category, it plainly does so. An example is found in 26 U.S.C. § 162(a), which allows the deduction of "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 162(a)(1) limits the deductibility of such expenses—to the extent they are for salaries or other compensation for personal services rendered—to that which is reasonable. The deduction set forth in § 162(a)(1), therefore, is circumscribed both by definition—is the expenditure an "allowance for salaries or other compensation for personal services actually rendered"?—and by amount—is the expenditure reasonable?

**22**

The court finds the intent of Congress regarding the deduction of R & E expenses to be plainly discernible from the language § 174(a)(1) itself. Absent a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive. *James*, 106 S.Ct. at 3122 (citing *Consumer Product Safety Com'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Where, as here, the terms of the statute are unambiguous, *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981), judicial inquiry is complete. So long as an expenditure is in fact for research and experimentation, it is deductible. Therefore, the court may disregard the jury's immaterial finding that $895,000 in research and experimentation expenditures were reasonably incurred. *Cf. Harville v. Anchor–Wate Co.*, 663 F.2d 598, 602 (5th Cir.1981) (when trial court submits case on special interrogatories, it is required to submit all *material* issues raised by the pleadings and evidence).

The court's fidelity to the statutory text does not suggest that § 174(a)(1) has been interpreted in a manner that the Internal Revenue Code otherwise reflects Congress did not intend. The lack of a reasonableness standard or other limitation on the amount of R & E expenditures may simply reflect Congress' satisfaction that the deduction of such expenses can be regulated at the definition stage. If a taxpayer can, as in the present case, prove that an expenditure was not entered into for the purpose of tax avoidance and was, in fact, qualified research, the expenditure will be deductible. Mertens, *Law of Federal Income Taxation* § 25.45 (1988) (taxpayer has burden of proving that amounts in question were expended for such purposes). Had the government prevailed at trial on its theory that the challenged expenditures were nothing more than a sham which enabled a group of physician-investors to deduct note payments as fully-deductible expenses rather than as partially-deductible capital losses, the regulation of R & E deductibility would have followed

from the finding that the expenditures were not, by definition, R & E.

Moreover, Congress may have determined that R & E expenditures are inherently insusceptible to measurement according to a reasonableness standard. As the taxpayers suggested at oral argument, could it not be said that all R & E expenditures that do not bear fruit in the form of entrepreneurial success are unreasonable? By contrast, Congress may have determined that all R & E expenditures are *per se* reasonable because, even if they lead to a dead-end, the innovative search is incrementally narrowed or the body of useful knowledge is otherwise enhanced.

Regardless of the reasons underlying Congress' intent not to limit R & E expenditures to those reasonably incurred, no such limitation applies in the present case. Accordingly, the government's motion for judgment notwithstanding the verdict or to amend the judgment must be and is denied.

SO ORDERED.