**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First RepublicBank Dallas, N.A., f/k/a First RepublicBank Oak Cliff, N.A. f/k/a InterFirst Bank Oak Cliff, N.A., and NCNB Texas National Bank, N.A., Plaintiffs,**

v.

**James A. LOYD, Johnny Barnes, and Bobbie N. Barnes, Defendants.**

**Civ. A. No. CA3–88–2758–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 2, 1990.

---

William Frank Carroll of Baker, Glast & Middleton, Dallas, Tex., for plaintiffs FDIC and NCNB.

James F. Mobley, Cedar Hill, Tex., for defendants Johnny Barnes and Bobbie N. Barnes.

FITZWATER, District Judge:

In this case the court holds that it retains the power to remand *sua sponte* an untimely removed civil action, notwithstanding a recent amendment to 28 U.S.C. § 1447(c), and that the action should be remanded.

## I

On March 8, 1985 InterFirst Bank Oak Cliff, N.A. ("InterFirst") filed this suit in Texas state court against defendants James A. Loyd,[1] Johnny Barnes, and Bobbie N. Barnes, alleging claims for fraudulent removal of funds from certain accounts. Defendants counterclaimed against InterFirst's successor, First RepublicBank Oak Cliff, N.A. ("RepublicBank"), on February 8, 1988. On July 29, 1988 the Comptroller of the Currency declared RepublicBank insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. RepublicBank's immediate successor, NCNB Texas National Bank ("NCNB"), appeared in the state court action on September 28, 1988.

Acting as receiver for RepublicBank, the FDIC intervened in the state court action on November 4, 1988. On the same date the FDIC and NCNB filed their notice of removal in this court. The FDIC and NCNB thereafter moved for partial summary judgment. In the course of considering the motion, the court noted for the first time that the removal may have been untimely. The court therefore pretermitted consideration of the summary judgment motion and *sua sponte* raised the question whether removal of the action was timely within the meaning of 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1446(b). The parties have addressed the question in letter briefs, and the FDIC additionally argues that the court lacks authority to remand the case even if it was untimely removed.

## II

### A

■ The court first determines whether removal was timely. Prior to enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.Code

Cong. & Admin. News (103 Stat.) 183 (1989), the FDIC's removal powers were set forth in 12 U.S.C. § 1819(Fourth). Section 1819 provided the FDIC the right to remove state court actions by "following any procedure for removal now or hereafter in effect." This court has interpreted § 1819 to require the FDIC to remove a case within the 30–day time limit imposed by 28 U.S.C. § 1446(b). *See, e.g., FDIC v. Brooks*, 652 F.Supp. 744, 745 (N.D.Tex. 1985) (Woodward, C.J.). This 30–day time limit remains applicable to the FDIC subsequent to the enactment of FIRREA.[2] *MTech Corp. v. FDIC*, 729 F.Supp. 1134, 1136–37 (N.D.Tex.1990) (Sanders, C.J.); *see also Resolution Trust Corp. v. Key*, 733 F.Supp. 1086, 1090 n. 6 (N.D.Tex.1990) (Fitzwater, J.); *FDIC v. Norwood*, 726 F.Supp. 1073, 1075–76 (S.D.Tex.1989).

Because the 30–day time limit embodied in § 1446(b) regulates the FDIC's removal right, and since the FDIC often becomes a party to otherwise non-removable litigation only after a bank that is already a litigant has been placed in receivership, a question presented in many cases removed by the FDIC is whether removal was effected "within 30 days after the receipt by the [FDIC] ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (Supp.1990). Construing the analogous removal provision[3] applicable to the Federal Savings and Loan Insurance Corporation ("FSLIC"), this court determined in *Addison Airport of Tex., Inc. v. Eagle Inv. Co.*, 691 F.Supp. 1022, 1025 (N.D.Tex.1988) (Fitzwater, J.), that "[w]hen the FSLIC is appointed receiver for a failed thrift that is a party to litigation, the first 'paper' that informs the FSLIC that the case is removable is the FHLBB's order appointing it as receiver." Several courts have applied similar analy-

---

**1.** Loyd is now deceased.

**2.** Neither party contends the enactment of FIRREA bears upon the FDIC's removal of this action. Because the result the court reaches is the same whether pre-FIRREA or post-FIRREA

§ 1819 is applied, the court expresses no opinion on the retroactivity of the relevant removal provisions of FIRREA.

**3.** 12 U.S.C. § 1730(k)(1)(C) (1989).

sis. *See, e.g., FSLIC v. Browning*, 732 F.Supp. 690, 691 (N.D.Tex.1989) (Sanders, J.) (FSLIC required to remove action within 30 days of its appointment as receiver; *Norwood*, 726 F.Supp. at 1075–76 (FDIC required to remove action within 30 days of its appointment as receiver); *American Sav. & Loan Ass'n of Brazoria County v. Hoss*, 716 F.Supp. 979, 980–81 (S.D.Tex. 1989) (same holding regarding FSLIC removal); *Woodlands II on the Creek Homeowners Ass'n, Inc. v. City Sav. & Loan Ass'n of San Angelo*, 703 F.Supp. 604, 606–07 (N.D.Tex.1989) (Fish, J.) (same).

 Applying the holding and reasoning of *Addison Airport* to this case makes clear that removal was untimely. RepublicBank was a party to the state court litigation on the date the FDIC was appointed as its receiver. The removal clock thus began to tick on the date of appointment—July 29, 1988. The FDIC did not remove the action until November 4, 1988, well over 30 days later. Removal was therefore untimely under § 1446(b).

The FDIC argues, however, that the removal clock did not commence until November 4, 1988, the date the FDIC formally intervened in the state action. This proposition does not square with *Addison Airport*, which the court finds no occasion to reexamine.

The FDIC essentially asks the court to accept these inconsistent propositions: On the one hand, the court should follow the general rule that the FDIC becomes a party to a suit involving a failed institution at the moment of its appointment as receiver and need not formally intervene in order to remove a state action. *See, e.g., North Miss. Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1100 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), *overruled in part on other grounds, Coit Indep. Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). On the other hand, the court should use the date of intervention as the relevant date for determining when the

FDIC became a party for purposes of the 30–day requirement imposed by § 1446(b). To state the FDIC's positions is to demonstrate the tension between them. According to the FDIC, it need not intervene in order to remove a case because it automatically becomes a party when appointed as receiver. Nevertheless, if the FDIC chooses to intervene, it is not deemed to be a party for purposes of § 1446(b) until the date of intervention. The court finds no support for this rationale in § 1446(b) or FDIC removal jurisprudence.

Accordingly, the court holds that when the FDIC is appointed as receiver for a failed institution that is already a party to on-going litigation in state court, the 30–day time limit of § 1446(b) begins to run upon the FDIC's receipt of notice of appointment. *See Addison Airport*, 691 F.Supp. at 1025. Removal of the present action was therefore untimely.[4]

### B

The conclusion that removal was untimely does not end the court's inquiry. The court must also decide whether the enactment in 1988 of the Judicial Improvements and Access to Justice Act (the "Judicial Improvements Act"), Pub.L. No. 100–702, 102 Stat. 4642 (1988), pursuant to which Congress amended 28 U.S.C. § 1447(c), precludes the court from remanding the case. This requires the court to resolve whether the Act, which took effect on November 19, 1988, controls as to a civil action removed on November 4, 1988.

 The Judicial Improvements Act contains no express effective date for amended § 1447(c). Certain courts have followed the general rule that "federal legislation becomes effective on the day of enactment" and have concluded the amended version of § 1447(c) became effective November 19, 1988. *E.g., Air Shields, Inc. v. Fullam*, 891 F.2d 63, 65 (3d Cir.1989); *Wilson v. General Motors Corp.*, 888 F.2d 779, 780–81 (11th Cir.1989); *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir.

---

**4.** The court rejects the FDIC's apparent contention that NCNB was entitled to remove the action on November 4, 1988 even if the FDIC was not. Assuming NCNB had an independent right of removal, it likewise removed the action more than 30 days after the action became removable.

1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990); *Greer v. Skilcraft,* 704 F.Supp. 1570, 1573 (N.D.Ala. 1989) (en banc). The substantial majority of courts to consider the question have held that amended § 1447(c) must be applied retroactively to cases pending on the effective date of the Act. *E.g., Air Shields,* 891 F.2d at 65; *Leidolf by Warshafsky v. Eli Lilly & Co.,* 728 F.Supp. 1383, 1387 (E.D. Wis.1990); *Strickland v. A.P. Propane, Inc.,* 721 F.Supp. 284, 285 (M.D.Fla.1989); *Coman v. Int'l Playtex, Inc.,* 713 F.Supp. 1324, 1328 (N.D.Cal.1989); *Gray v. Moore Business Forms, Inc.,* 711 F.Supp. 543, 545–46 (N.D.Cal.1989). Defendants offer no basis for concluding amended § 1447(c) should not be applied. The court accordingly follows the Supreme Court's instruction that "even where the intervening law does not explicitly recite that it is to be applied in pending cases, it is to be given recognition and effect." *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 715, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974).

C

Having determined that the amended version of § 1447(c) applies, the court must decide whether the case can be remanded. Prior to its amendment by the Judicial Improvements Act, § 1447(c) provided, in pertinent part, that if "at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." 28 U.S.C. § 1447(c) (1973). As amended, § 1447(c) now provides, in pertinent part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The court has little difficulty holding that defendants cannot now move to re-mand this case. The plain language of § 1447(c) mandates that "[a] motion to remand the case on the basis of any defect in removal procedure *must* be made within 30 days after the filing of a notice of removal under section 1446(a)" (emphasis added).[5] That time-deadline has long-since expired.

The defendants' inability to move to remand does not, however, resolve the question whether § 1447(c) prevents the *court* from remanding an improperly removed action on its own. Recognizing that there is a split of authority on the issue, the court holds for the reasons that follow that it retains the power to remand an untimely-removed action even after expiration of the 30–day period that § 1447(c) prescribes for filing remand motions.

The first court to consider the question in a published opinion appears to be the United States District Court for the Northern District of Alabama. In *Smith v. MBL Life Assurance Corp.,* 727 F.Supp. 601 (N.D.Ala.1989), the district court *sua sponte* remanded, more than 30 days after removal, an action removed on the basis of diversity of citizenship. The case had been pending in state court for a period of five years at the time of removal. *Id.* at 603, 604. Removal was therefore untimely because, as amended by the Judicial Improvements Act, § 1446(b) precluded removal on the basis of diversity where an action had been pending in state court for more than one year. Rejecting defendant's argument that remand was precluded by § 1447(c), the *Smith* court found "no logical reason why the case cannot be remanded *sua sponte* at any time after thirty (30) days, with or without a motion having been filed by Plaintiff." *Id.* at 604.

Thereafter, the Third Circuit reached a contrary result in *Air Shields,* 891 F.2d at 63. The *Air Shields* panel granted a writ of mandamus that reversed the district court's *sua sponte* remand of a case where the district court did not act within 30 days of the date the defendant filed its notice of removal. 891 F.2d at 65, 66. The circuit court reasoned that § 1447(c) prohibited re-

---

5. Failure to remove within the 30–day time limit set forth in § 1446(b) constitutes a "defect in removal procedure." *E.g., Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983).

mand because "the district court could only remand within 30 days of the filing of notice to remove for procedural defects." *Id.* at 65. The Third Circuit treated the district court's action as having been undertaken pursuant to its own motion. *Id.* It therefore held that the district court "exceeded its statutorily defined power" by remanding the case more than 30 days after removal. *Id.* at 66 (citation omitted).

This court begins its statutory interpretation, as it must, with the language of the statute itself. *Driggs v. United States,* 706 F.Supp. 20, 21 (N.D.Tex.1989) (citing cases). The court seeks to determine the intent of Congress from the language the legislative branch employed. "It is the intent of Congress—not the choice of a judge—that must control." *Id.* The court concludes that *Smith* reaches the result dictated by § 1447(c).

The plain language of § 1447(c) does not foreclose a court from acting *sua sponte* to remand an untimely removed civil action. Significantly, the statute regulates remands for procedural irregularities only by prescribing a time limit within which a *motion* based upon a defect in removal procedure must be filed: "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of a notice of removal under section 1446(a)." In the civil context presented here, however, motions are not normally considered to be an action taken by the court itself. Indeed, the federal rules of civil procedure contain several references to the court's acting on its own *initiative,* but in only one instance refer to the court's acting upon its own *motion.* *Compare* Fed.R.Civ.P. 4(j), 5(d), 11, 12(f), 21, 26(b)(1), 39(a), 59(d) & 60(a) (own initiative) *with* Fed.R.Civ.P. 81(c) (own motion).[6]

It is therefore helpful for the purpose of interpreting § 1447(c) to understand that the term "motion" does not inexorably refer in the context of civil litigation to action taken by the court. Given the predominant use of the phrase "own initiative" in the federal civil procedural rules, the term "motion" in § 1447(c) likely means only a request presented by a party. Nothing in the language of § 1447(c) suggests that Congress intended to preclude judges from remanding improperly removed actions on their own simply because the non-moving party, for whatever reason, failed to object within 30 days of removal. Had Congress so intended, it could easily have amended § 1447(c) plainly to so provide.[7]

When the terms of a statute are unambiguous, judicial inquiry is complete except in rare and exceptional circumstances. *Cavazos v. Simmons,* 90 B.R. 234, 239 (N.D.Tex.1988) (citing cases). Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but in the absence of a clearly expressed legislative intention to the contrary, the language of the statute must ordinarily be regarded as conclusive. *Id.* (citing and quoting cases). The court discusses the legislative history of the Judicial Improvements Act only to buttress its conclusion that § 1447(c) does not, in its amended form, tie the discretionary hands of the court.

As reflected in the House Report, *see* H.R.Rep. No. 889, 100th Cong., 2d Sess. 1, 72, *reprinted in* 1988 U.S.Code Cong. & Admin. News 5982, 6033, Congress intended by amending § 1447(c) to eliminate a mandatory remand to state court if at any time before final judgment it appeared the

---

**6.** The court recognizes that the Federal Rules of Criminal Procedure refer to the court's acting on its "own motion," *see* Fed.R.Crim.P. 17.1, 29(a), 31(d) & 32.1(b), and that the Federal Rules of Appellate Procedure employ both terms, *compare* Fed.R.App.P. 2 & 3(b) (own motion) *with* Fed.R.App.P. 10(e) (own initiative). The Federal Rules of Bankruptcy Procedure and the rules of the Supreme Court and several circuit and district courts utilize both terms. Nevertheless, for purposes of understanding § 1447(c), a civil action removal stat-

ute, the court finds most pertinent the federal rules of civil procedure.

**7.** For example, Congress could have amended the relevant language to read as follows: "The district court shall not remand a case on the basis of any defect in removal procedure unless, within 30 days after the filing of the notice of removal under Section 1446(a), a party by motion, or the district court on its own initiative, raises any such defect."

action had been removed improvidently. Congress sought to eliminate the compulsory remand of procedurally defective removals "[s]o long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction." *Id.* Congress also sought to foreclose parties from using procedural defects as a tool for forum shopping:

> There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means of forum shopping if the litigation should take an unfavorable turn. The amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction.

*Id.* Congress also intended to preserve the district court's discretion[8] to remand cases in which no federal question remained. According to the House Report:

> The amendment is written in terms of a defect in "removal procedure" in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.

None of the apparent purposes for amending § 1447(c) is impinged by this court's interpretation of the statute. The court does not construe § 1447(c) to require that a defectively removed action be remanded, but instead relegates the matter to the court's discretion. A party may not engage in forum shopping because parties are clearly bound by the 30–day rule imposed by the amended statute. The court's decision does not call into question the court's discretion to remand a case in which only pendent or ancillary state law questions remain.

Aside from the language and legislative history of § 1447(c), the court can discern no policy consideration for tying the discretionary hands of the court. Unlike adversary parties, who Congress has suggested may find it advantageous to withhold invoking a procedural defect until determining they are satisfied with the federal forum, district courts have no such hidden agenda. District judges must decide as a matter of discretion whether to remand on their own initiative. Like all such questions, the court's discretion must be informed and principled. Moreover, holding the district court to the same 30–day limit that applies to parties may cause the court to act with unwarranted haste or in a factual vacuum. An opposing party may know of a procedural defect at the time of removal. The district court cannot normally be expected to discern timeliness problems that are not confessed in the notice of removal.

### D

Having concluded that the action can be remanded, the court now decides whether to remand the case.

Included among the factors that may inform the court's discretion are the procedural stage at which untimely removal is discovered, the role the opposing party has played in raising the timeliness question, the history of any state court proceedings that transpired prior to removal, and whether remand would result in an injustice to a party. In the present case the court discovered the removal defect at the pretrial motion stage in a case in which there is no trial setting. No party has asked the court to invoke on its "own initiative" the discretion to remand. This case had been pending more than three years in Texas state court prior to removal and remained in state court almost four months after it became removable. And an order of remand will result in no injustice to a party.

The jurisprudence that governs the removal rights of the FDIC is well-known and is fair to the FDIC. The court therefore has no hesitancy holding the FDIC to the rule of *Addison Airport* and like cases and remanding to state court an action that

---

8. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988) (district court has discretion to remand to state court removed action involving pendent claims when all federal-law claims have dropped out of action).

was removed well after the applicable deadline. This action is remanded to the 95th Judicial District Court of Dallas County, Texas because it was not removed within the time prescribed by 28 U.S.C. § 1446(b). Costs of removal are taxed against the FDIC.

The clerk of court shall effect the order of remand in accordance with the usual procedure.

SO ORDERED.