**WOBURN FIVE CENTS SAVINGS BANK, et al., Plaintiffs, Appellees,**

v.

**ROBERT M. HICKS, INC.,
Defendant, Appellee.**

**Federal Deposit Insurance Corporation, Plaintiff, Appellant.**

No. 90–2018.

United States Court of Appeals,
First Circuit.

Heard March 5, 1991.

Decided April 22, 1991.

Daniel H. Kurtenbach, Washington, D.C., Sr. Atty., Federal Deposit Ins. Corp., with whom Allen N. David, Lon A. Berk and Peabody & Arnold, Boston, Mass., were on brief, for plaintiff, appellant.

Joseph P. Donahue, Jr. with whom Andrea E. Saunders, Donahue & Donahue, Lowell, Mass., and Jerry E. Benezra, Melrose, Mass., were on brief, for defendant, appellee Robert M. Hicks, Inc.

Before CYR, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

This case requires us to determine whether the Federal Deposit Insurance Corporation (FDIC) is subject to the 30–day time limitation contained in the general removal statute, 28 U.S.C. § 1446(b), and, if so, when the clock begins to run on the FDIC's right to remove. The district court, applying the 30–day limitations period, concluded that the FDIC's removal was untimely. It consequently remanded the case to a Massachusetts superior court. We affirm.

## I. *Background*

This case originally was filed in the Suffolk Superior Court in Massachusetts on September 12, 1988 by three plaintiffs, including MerchantsBank of Boston, who sought to recover for alleged overcharges on a construction contract. The defendant, Robert M. Hicks, Inc. (Hicks), counterclaimed for breach of contract, defamation and violation of Mass.Gen.Laws ch. 93A. The case was tried in January 1990. The jury returned a verdict for Hicks on plaintiffs' claims and also found for Hicks on the breach of contract and defamation claims, awarding more than $1.5 million in damages. The chapter 93A claim was tried to the judge, who asked the parties after the jury verdict to submit requests for findings on that claim.

Before the chapter 93A decision issued, MerchantsBank became insolvent. On May 18, 1990, the FDIC was appointed receiver and immediately sought and obtained stays of all pending litigation involving MerchantsBank in both state and federal courts, except for mortgage foreclosure actions. The state court stay had one further exception. It provided that "[n]othing in this Order shall affect the right of [the FDIC] to remove any stayed action to Federal Court."

Although the FDIC represented in its stay application that it would file a copy of the stay in each pending case and on each attorney of record, Hicks' attorney never was served with such a copy and the superior court judge in this action was not notified of the stay until August 1, 1990—the day after judgment had entered for Hicks on the chapter 93A claim.[1] That judgment subsequently was vacated and stricken from the record in deference to the stay.[2]

On August 15, 1990, the FDIC filed a petition to remove the action to the United States District Court for the District of Massachusetts. On August 21, one day before the 90–day stay of federal litigation was to expire, the FDIC filed an application to extend the temporary stay for an additional 90 days and requested an expedited decision. On August 22, the district court granted the request, but explicitly allowed a motion to vacate because Hicks had not been given an opportunity to oppose the extension. Hicks thereafter filed both a motion to remand and a motion to vacate

---

1. The judge had set forth his findings in a Memorandum of Opinion dated May 25, 1990.

2. The FDIC's predecessor counsel filed a copy of the stay with the Suffolk Superior Court on August 1. No notice of that filing was given to Hicks, whose counsel did not learn of the stay and cancellation of the July 31 judgment until mid-September 1990.

the extension of the temporary stay, accompanying both with lengthy memoranda. The district court agreed with Hicks on both fronts, and specifically adopted Hicks' reasoning on the untimeliness of the FDIC's removal.[3] In abbreviated form, Hicks' contention was that the FDIC was required, pursuant to the 30–day limitations period contained in 28 U.S.C. § 1446(b), to seek removal within 30 days after it was named receiver for Merchants-Bank on May 18, 1990.

The action was returned to the Suffolk Superior Court on October 5, 1990, and this appeal followed. The district court subsequently denied an application by the FDIC to stay the order of remand pending appeal.

## II. *Discussion*

Before enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. §§ 1811–1833e, the statute governing removals by the FDIC stated that the Corporation could remove state court cases "by following any procedure for removal now or hereafter in effect," 12 U.S.C. § 1819 (Fourth). This language was interpreted to mean that the FDIC was subject to the provisions contained in the general removal statute, 28 U.S.C. §§ 1446–1452, including the requirement that removal take place within 30 days after the case had become removable, *id.* at § 1446.[4] *See, e.g., FDIC v. The Atlantic Organization, Inc.,* 682 F.Supp. 5, 7 (D.P.R.1988) ("[T]he right to remove under § 1819(4) is subject to the limitations under 28 U.S.C. sec. 1446(b)."). FIRREA, however, eliminated the language referring to "any procedure for removal now or hereafter in effect." *See* 12 U.S.C. § 1819(b)(2)(B).[5] The FDIC argues

that the omission of this language means that the 30–day time limit in § 1446(b) no longer applies. It further argues that, even if the provision does still apply, its removal was timely. We shall consider each of these contentions in turn.

A. *Does the 30–day time limit of § 1446(b) still govern FDIC removals?*

We begin by expressing our doubt that this issue was properly preserved. In its memorandum opposing Hicks' motion to remand, the FDIC quoted in a footnote the removal provision as it existed before amendment by FIRREA. The footnote then continued as follows:

> In 1989 Congress enacted FIRREA, which amended the above language in several important respects. FIRREA specifically omitted the phrase "by following any procedure for removal now or hereafter in effect." Therefore, it is unclear whether the 30–day limitations period still applies to FDIC removals. FIRREA also allows for the immediate appeal by the FDIC for any order of remand entered by any United States district court. 12 U.S.C. § 1819(b)(2)(C).

Opposition to Motion to Remand at 3 n. 2.

This was the only mention made of the continuing applicability of general removal procedures to the FDIC. Thus, the FDIC never directly asked the district court to decide whether FIRREA affected the procedure for FDIC removals. Its brief passing comment, in a footnote, that FIRREA may have wrought a change in the applicability of the limitations period arguably fell short of giving the district court a meaningful opportunity to consider the issue. We need not dwell on the question of waiver, however, because we conclude that the

---

**3.** The judge made the following notation in the margin of Hicks' motion for remand: "ALLOWED. Removal was not timely as stated in the defendant's memorandum."

**4.** In relevant part, § 1446(b) states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be

ascertained that the case is one which is or has become removable....

**5.** Section 1819(b)(2)(B) states:

> Except as provided in subparagraph (D) [involving circumstances not relevant here], the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.

FDIC's substantive argument is, in any event, unavailing.

■ The FDIC contends that Congress, by eliminating the language permitting it to remove cases by "following any procedure for removal now or hereafter in effect," intended that the general removal statute no longer should serve as a model for FDIC removals, particularly with respect to the 30–day time limit. It claims that Congress's purpose in deleting the provision was to increase the FDIC's flexibility, ensuring that the Corporation would have enough time to analyze a pending state court action before needing to decide whether to remove it.

At oral argument, the FDIC stated that its position was not that it was subject to *no* time limits, but rather that Congress intended to replace automatic use of the 30–day limitations period with a case-by-case review of the FDIC's needs. The FDIC suggested that such a review reasonably could lead a court to adopt the 90–day time limit set in FIRREA for removals by the Resolution Trust Corporation (RTC), another banking industry entity created by Congress, because the factors involved in FDIC and RTC removals likely would be similar.

We find this reasoning unpersuasive for a number of reasons. First, the FDIC's need for additional review time is met by the provision allowing the Corporation to seek a 90–day stay of all actions pending against the insolvent institution. *See* 12 U.S.C. § 1821(d)(12)(A). The FDIC in this case obtained such a stay, although it specifically excepted removal from its coverage. Second, Congress in drafting FIRREA clearly knew how to provide for alternative removal procedures when it deemed them appropriate. The provision in FIRREA governing removal by the RTC prescribes specific time limitations different from those contained in § 1446(b), which also previously applied to the RTC. *See* 12 U.S.C. § 1441a(*l*)(3). Congress could have drafted a similar provision for the FDIC if it wished similar treatment for that entity. Third, FIRREA explicitly exempts the FDIC from two general removal require-ments, allowing removal "without bond or security" and allowing appeal of a remand order.

These specific alterations of the general removal scheme evidence Congress's intent not to create a FDIC removal power under FIRREA wholly independent of that general process. If FIRREA were intended to establish a wholly independent method of removal, there would have been no need for Congress to enumerate these specific exceptions to the general removal provisions. *FDIC v. Norwood,* 726 F.Supp. 1073, 1075 (S.D.Tex.1989).

Finally, we think it inconceivable that Congress, without any explicit statement, intended such a drastic departure from existing practice. The FDIC for years has been required to adhere to the procedures set forth in the general removal statute. If Congress had intended to render that statute inapplicable and to leave FDIC removal procedures up to the discretion of individual judges, surely it would have said so explicitly. *See MTech Corp. v. FDIC,* 729 F.Supp. 1134, 1136 (N.D.Tex.1990) ("If Congress had sought to insulate the FDIC from § 1446(b)'s time restrictions, it could have explicitly said so.").

We think our discussion makes it clear that the only plausible explanation for the deletion of the "any procedure for removal" phrase is that it was deemed redundant. In the absence of any other specified procedure, logic dictates that FDIC removals continue to be governed by the same general removal principles that govern any other removal.

We therefore conclude that the district court correctly determined that the 30–day time limitation for removal contained in § 1446(b) applied in this case.

B. *Was the FDIC's removal timely?*

■ Our more difficult task in this case is to determine when the limitations period began to run. Pursuant to § 1446(b), a case that was not initially removable must be removed

within thirty days after receipt by the defendant, through service or otherwise,

of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . .

The FDIC's entry into this case in the place of MerchantsBank is what made the action removable. *See* 12 U.S.C. § 1819(b)(2)(A).[6] The precise question before us is what constitutes sufficient entry to trigger the 30–day clock. Defendant Hicks, whose position was adopted by the district court, contends that the clock started ticking on May 18, 1990, when the FDIC was appointed receiver for MerchantsBank. Under this approach, the petition submitted on August 14 was too late.

The FDIC, however, claims that a removal petition is timely so long as it is filed within 30 days after the Corporation formally intervenes or is formally substituted into an action. It further argues that we are bound by a prior holding to that effect in *FDIC v. Otero*, 598 F.2d 627, 633 n. 7 (1st Cir.1979), in which we held that the defendants timely removed following the FDIC's intervention as a plaintiff in the case. The FDIC contends that its petition met the *Otero* requirement.

We are persuaded, like the district court, that Hicks' approach is the correct one, and we do not believe that *Otero* constrains us from so holding. In *Otero*, we said that "the case was not 'removable' within the meaning of the statute until the FDIC actually intervened. . . ." 598 F.2d at 633 n. 7.[7] This phrasing seems to suggest that the parties are not *permitted* to remove until the FDIC formally has entered the case, presumably on the theory that there is no federal jurisdiction until the FDIC is an official party. *See* 12 U.S.C. § 1819(b)(2)(A) (federal jurisdiction exists for civil suits in which FDIC is a *party* ).

To the extent *Otero* was intended to stand for that principle, we question its correctness.

We need not directly confront *Otero* to resolve the instant action, however, because *Otero* can be viewed as limited to those cases in which the FDIC acquires its interest in the litigation through a corporate act rather than through appointment as receiver. In *Otero*, the FDIC purchased the obligations at issue in its general corporate capacity, and it arguably may be more appropriate to await formal substitution of parties when the FDIC's role is as a contractual assignee of specific assets than when it is appointed to take over entirely the running of the bank involved in the litigation.

Whatever the continuing strength of *Otero* in situations involving the FDIC's corporate capacity, however, when the FDIC's involvement in litigation stems from its role as receiver of a failed institution, we think the more reasonable approach is to treat the FDIC as a full party as a matter of law at the time of appointment since, at that time, the bank ceases to operate independently. Such an approach recognizes that it is at the time of receivership that the case is transformed into "one in its nature removable," *Powers v. Chesapeake & Ohio Railway*, 169 U.S. 92, 98, 18 S.Ct. 264, 266, 42 L.Ed. 673 (1898), and that delaying the effect of the change until formal substitution of parties has taken place would be to elevate form over substance. This pragmatic view of the FDIC's status, which we believe is consistent with the liberal philosophy of the Federal Rules of Civil Procedure, follows the approach adopted by the Fifth and Eleventh Circuits and two district courts outside of those circuits, including one First Circuit court.

---

**6.** Section 1819(b)(2)(A) established federal question jurisdiction for this case by providing that "all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."

**7.** Our entire discussion on timeliness in *Otero* was contained in footnote 7. The full text of the note is as follows:

We reject as frivolous appellant's claim that the removal petition was untimely under 28 U.S.C. § 1446(b). Although appellees had notice of the assignment of the notes to the FDIC in November 1977, the case was not "removable" within the meaning of the statute until the FDIC actually intervened in February, 1978. The petition for removal was timely filed within 30 days of the FDIC's intervention.

*See In re Savers Federal Savings & Loan Ass'n,* 872 F.2d 963, 964–65 (11th Cir.1989) (per curiam); *North Mississippi Savings & Loan Ass'n v. Hudspeth,* 756 F.2d 1096, 1100 (5th Cir.1985), *overruled in part on other grounds, Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989); *Heafitz v. Interfirst Bank of Dallas,* 711 F.Supp. 92, 95 n. 3 (S.D.N.Y.1989); *Structural Systems, Inc. v. Sulfaro,* 687 F.Supp. 22, 23 (D.Mass.1988).[8] *But see T & M Dental Lab, Inc. v. First Industrial Bank,* 714 F.Supp. 798, 800 (E.D.La.1989) (case not "removable" until formal substitution because FDIC not a "party" under Louisiana law until then); *Interior Glass Services, Inc. v. FDIC,* 691 F.Supp. 1255, 1256–57 (D.Alaska 1988) (FDIC not "party" under Alaska law until state court granted motion for substitution); *FDIC v. Brooks,* 652 F.Supp. 744, 745 (N.D.Tex.1985) (FDIC acting as receiver becomes a party for purposes of removal on date of intervention).[9]

Moreover, *Otero* is distinguishable from this case because it involved removal by *other* parties, not the FDIC. This difference matters because the obvious purpose of starting the 30–day clock only after the defendant's receipt of a "paper" revealing the case's removability is to ensure that *the party seeking removal* has notice that the case is removable before the limitations period begins to run against it. *See American Savings and Loan Ass'n v. Hoss,* 716 F.Supp. 979, 981 (S.D.Tex.1989). When the party seeking removal is *not* the FDIC, as in *Otero,* such notice is assured by awaiting formal evidence of the Corporation's

entry into the litigation. To be sure, the parties in some cases may learn of the FDIC's involvement at an earlier time. But fixing the point of formal entry as the activating date for the 30–day period guarantees that the parties know the case has become removable and avoids the need to litigate the actual time of notice.

When the FDIC is the removing party, however, there is no possible uncertainty about the first notice of removability. The FDIC knows from the moment it is appointed receiver that it has the right to remove under FIRREA, and delaying the running of the 30–day clock beyond that point is not necessary for the purpose of assuring notice. *See Hoss,* 716 F.Supp. at 981 (*"[W]here FSLIC is the removing party,* the thirty-day requirement of section 1446(b) begins to run the day FSLIC is appointed to take over the failed institution.") (Emphasis added.)[10]

Starting the clock when the FDIC is appointed receiver also is consistent with Congressional intent—as manifested in the 30–day limitations period—that removal take place "at the earliest possible opportunity," *Powers,* 169 U.S. at 100, 18 S.Ct. at 267, "to prevent the delay and waste of judicial resources," *FDIC v. The Atlantic Organization, Inc.,* 682 F.Supp. at 8. *See also Wilson v. Intercollegiate (Big Ten) Conf., Etc.,* 668 F.2d 962, 965 (7th Cir.1982). The longer a party waits to remove, the greater the opportunity for costly—and ultimately meaningless—state court efforts to advance the litigation.

8. Although the courts in *Structural Systems* and *Heafitz* held that formal intervention by the FDIC before the filing of a petition for removal was not necessary to support federal jurisdiction, they also followed *Otero* in holding that a removal petition would be considered timely if filed within 30 days after the FDIC's formal intervention or substitution. We consider these positions to be inconsistent. *See infra* at note 9.

9. Indeed, the FDIC itself does not contend that formal intervention or substitution as a party is a prerequisite to federal jurisdiction. It never filed such a motion, perhaps assuming that its petition for removal made it unnecessary to file a separate motion for intervention or substitution. We consider this an untenable theory.

To state the FDIC's positions is to demonstrate the tension between them. According to the FDIC, it need not intervene in order to remove a case because it automatically becomes a party when appointed as receiver. Nevertheless, if the FDIC chooses to intervene, it is not deemed to be a party for purposes of § 1446(b) until the date of intervention. The court finds no support for this rationale in § 1446(b) or FDIC removal jurisprudence. *FDIC v. Loyd,* 744 F.Supp. 126, 129 (N.D.Tex. 1990).

10. We refer to cases involving the FSLIC interchangeably with those involving the FDIC in circumstances in which the statutory schemes for the two corporations are parallel.

In addition, linking the 30–day clock to the FDIC's formal entry into the case—which is governed by no limitations period—effectively would exempt the FDIC from the time constraints contained in § 1446(b) because the Corporation could delay the clock for an extended time simply by refusing to file a motion to intervene. Giving the FDIC such control over its removal date would subvert the second purpose of the thirty-day limitation period—to deprive the removing party of an undeserved tactical advantage.

> If state court litigation was proceeding well, then [FDIC] could lie behind the log and do nothing. If the litigation was turning sour, then [FDIC] could substitute counsel, file its plea in intervention, and remove to federal court. Tactical removals encourage delay and frustrate the public policy requirement that removals be timely made because the removing party ([FDIC]) would never be truly subject to section 1446(b)'s thirty-day requirement.

*Hoss,* 716 F.Supp. at 981.[11] *See also Jackson v. American Savings Mortgage Corp.,* 924 F.2d 195, 197–98 (11th Cir.1991).[12]

Thus, from every perspective, logic dictates that when the FDIC is the removing party, the thirty-day requirement of § 1446(b) should take hold the day the FDIC is appointed receiver for the failed institution. As we have seen, that date is most consistent with the dual purposes of the limitations period while also protecting the FDIC's right to clear notice of removability. *See Jackson,* 924 F.2d at 198 ("Although we do not decide, it certainly appears that ... the time for removal might well begin to run from the day on which the government corporation is appointed."); *Addison Airport of Texas, Inc. v. Eagle Investment Co.,* 691 F.Supp. 1022, 1025 (N.D.Tex.1988) ("When the FSLIC is appointed receiver for a failed thrift that is a party to litigation, the first 'paper' that informs the FSLIC that the case is removable is the FHLBB's order appointing it as receiver."); *Norwood,* 726 F.Supp. at 1076; *Hoss,* 716 F.Supp. at 981.

■ The FDIC asserts one final reason why its petition was timely. It claims that the 90–day stay of state court action that it obtained from the Massachusetts Supreme Judicial Court tolled the 30–day period of § 1446(b). The FDIC's application to the SJC, however, specifically requested that the stay "not affect the right of FDIC to remove any such action to federal court," and the SJC embodied that exception in its order granting the stay. The FDIC does not discuss the effect of this removal exception in either its opening or reply briefs, and therefore does not explain the basis for its position that the right to remove carved out of the stay order was not encumbered by the usual removal procedures contained in § 1446(b). It instead emphasizes that the stay provision is intended to provide the FDIC with breathing room to analyze pending litigation, and it highlights the statement in its stay application to that effect. *See* Application at 2 ("The purpose of this statute is to provide FDIC with a period of time within which it can review and evaluate pending cases and determine among other things whether to exercise its right to remove....").

We are unpersuaded that Congress intended the FDIC to have it both ways. While the stay provision gives the FDIC the ability to delay litigation until the Corporation has the "chance to analyze pending matters and decide how best to proceed," H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 331 (1989), *reprinted in* 1989 U.S. Code Cong. & Admin.News 86, 127, we see no basis for the FDIC's position that a stay explicitly excluding certain actions from its coverage nevertheless exempts the Corpo-

---

11. As noted above, however, the FDIC does have the option of extending its limitations period by means of FIRREA's stay provision, 12 U.S.C. § 1821(d)(12)(A). *See supra* at p. 968.

12. The court in *Jackson* noted that holding the 30–day clock until the FSLIC (or FDIC) actually intervenes or until another party obtains an order making it a party would mean that "the window for removal might be extended indefinitely." 924 F.2d at 197. The court observed that "[s]uch a 'wait and see' ability gives the government corporation greater power than necessary to carry out its duties," *id.* at 198.

**972**

ration from the usual procedural limitations governing those excluded actions. The needs to prevent delay and avoid tactical removals remain competing concerns in this context, and we therefore believe it inappropriate to construe the *exception* to the stay as embodying an exemption from the usual limitations on the FDIC's right to remove. We instead conclude that when the FDIC preserved its right to remove, it also preserved its associated obligation to do so in a timely fashion.

*Accordingly, the judgment of the district court remanding this action to the Suffolk Superior Court is AFFIRMED.*