**CONNECTICUT BANK AND TRUST COMPANY, N.A., Plaintiff,**

v.

**CT PARTNERS, INC., Roger B. Clark, Jay N. Torok and Carolyn B. Torok, Defendants.**

**CT PARTNERS, INC., Roger B. Clark, and Jay N. Torok, Counterclaim Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of the Connecticut Bank and Trust Company, N.A., Counterclaim Defendant.**

No. 5:91CV00108 (TFGD).

United States District Court, D. Connecticut.

May 9, 1991.

Edward McCreery III, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiff and counterclaim defendant.

Robert H. Rubin and Jamie K. Gerard, Nevas, Nevas, Capasse, Rubin & Sarezky, Westport, Conn., for defendants.

## RULING ON THE FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTIONS TO SEVER AND TO STAY, AND ON THE DEFENDANTS' MOTION TO REMAND

F. OWEN EAGAN, United States Magistrate Judge.

The Federal Deposit Insurance Corporation ("FDIC") moves to sever the defendants' counterclaims and stay proceedings thereon pending exhaustion of the FDIC's administrative review of those claims. The defendants oppose these motions, and have filed a motion to remand this action to the state court. These three motions are addressed herein.

### FACTUAL BACKGROUND

The Connecticut Bank and Trust Corporation, N.A. ("CBT") commenced this action in Connecticut Superior Court on December 5, 1990, seeking to foreclose upon a mortgage executed by defendant CT Partners, Inc., in favor of CBT, and to collect upon the guarantees of the individual defendants, Roger B. Clark and Jay N. Torok. In its action, CBT also seeks to set aside an alleged fraudulent conveyance of real property by Mr. Torok to his wife. On February 4, 1991, the defendants filed an answer to CBT's complaint which included four counterclaims alleging: (1) breach of oral contract; (2) breach of the covenant of good faith; (3) breach of a condition precedent; and (4) promissory estoppel. These counterclaims arise out of the alleged failure of CBT to renew a certain note relating to the financing of a residential building development. The counterclaims seek money damages and an order of specific performance regarding the financing agreement.

On January 6, 1991, after the filing of CBT's complaint, but before the filing of the defendants' answer, the United States Comptroller of the Currency declared CBT to be insolvent, and appointed the FDIC as receiver of all assets and liabilities. Shortly thereafter, the FDIC organized a "bridge bank" known as the New Connecticut Bank and Trust Company ("New CBT")

which assumed all of the assets of the former CBT, including the present foreclosure action. However, the FDIC remains liable for all claims filed against the former CBT. On March 1, 1991, counsel for the FDIC removed this action to the district court.

## DISCUSSION

### I. Motion to Remand

The defendants move to remand this action to state court on the ground that the FDIC's removal motion is untimely. 28 U.S.C. § 1446 provides the procedure to be followed to effect the removal of actions to the district courts. Regarding the time in which a petition for removal may be filed, § 1446(b) provides, in pertinent part:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

Section 1446 and the remainder of the removal statutes speak only of defendants as appropriate parties to remove actions. *See generally*, 14A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3721. However, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1811 to 1833e, authorizes the FDIC, to remove any action to which the FDIC is a party. 12 U.S.C. § 1819(b)(2)(A) and (B). With a few exceptions not relevant here, the statutes pertaining to removal, including 28 U.S.C. § 1446, govern the removal of actions by the FDIC. *Mtech Corp. v. Federal Deposit Ins. Corp.*, 729 F.Supp. 1134 (N.D.Tex.1990); *Federal Deposit Ins. Corp. v. Norwood*, 726 F.Supp. 1073 (S.D.Tex.1989).

The FDIC, in its notice of removal, alleges that this action became removable on January 6, 1991, the date CBT was declared insolvent and the FDIC was appoint-

ed receiver. The defendants argue that this action must be remanded to state court because the FDIC did not remove this action until March 1, 1991, more than thirty days after removal became permissible. Indeed, if the FDIC were correct in alleging that this action became removable on January 6, 1991, the defendants would be entitled to a remand of this action.

■ However, this action was not removable on January 6, 1991 because, as of that date, there were no claims pending by or against the FDIC as Receiver of CBT. This action did not become removable until after the defendants filed their answer and counterclaims on February 4, 1991. Section 1446(b) provides that the thirty day time limit for removal runs from the date the removing party receives a copy of the "initial pleading setting forth the claim for relief upon which such action or proceeding is based," and because the record reveals that the FDIC could not have received a copy of the defendants' counterclaims until, at the earliest, February 4, 1991, the FDIC's removal on March 1, 1991 was timely.[1]

In holding that the FDIC's removal of this case was timely, the court must distinguish three cases which have held that the thirty day limitations period begins to run on the date the FDIC is appointed receiver of the failed financial institution. *See Woburn Five Cents Savings Bank v. Hicks*, 930 F.2d 965 (1st Cir.1991); *Mtech Corp. v. Federal Deposit Ins. Corp.*, 729 F.Supp. 1134 (N.D.Tex.1990); *Federal Deposit Ins. Corp. v. Norwood*, 726 F.Supp. 1073 (S.D. Tex.1989). In each of these cases the courts remanded actions that were not removed within thirty days of the appointment of the FDIC as receiver. However, the present case did not become removable merely because the FDIC was appointed receiver. Upon the declaration that CBT was insolvent, the FDIC chartered a bridge

---

1. The court notes for the record that the FDIC's Notice of Removal appears to be identical to the more than eighty such notices that appear in similar cases currently on the court's docket. The court appreciates the legitimate interest of the FDIC in keeping its litigation costs at a minimum. Nevertheless, the court feels compelled to admonish the FDIC and its local counsel to avoid boilerplate language where, as in this case, such language is not appropriate, especially with regard to the dates on which relevant events occurred.

bank, known as New CBT, which was assigned all of the assets of the former CBT. The FDIC as receiver retained only the liabilities of the former CBT. While the New CBT may have been entitled to substitute itself as the plaintiff in this action as of January 6, 1991, the FDIC could not have become a party until the defendants counterclaims were filed on or after February 4, 1991 because there were no claims against the former CBT in this action until that date. Because the FDIC removed this action within thirty days after it received a copy of the defendants' answer and counterclaims, the court holds that the FDIC's removal was timely in this case.

## II. Motion to Stay

The FDIC moves to stay all proceedings on the defendants' counterclaims pending exhaustion of the FDIC's administrative review process. This motion is supported by the relevant statutory provisions and case law. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), P.L. 101–73, includes a process for handling claims against financial institutions that have been placed in FDIC receivership. The FDIC must give notice that claims must be filed within a specified time, and must either allow or disallow each claim within 180 days from the date the claim was filed. *See* 12 U.S.C. §§ 1821(d)(5)(A), (B) and (D).

■ Although it is not evident from a first reading of the FIRREA, relevant case law interpreting the statutory scheme has held that the district courts do not have jurisdiction over claims against the FDIC as a receiver of a failed financial institution until those claims have either been denied by the FDIC or the 180 day period for administrative review has expired. 12 U.S.C. § 1821(d)(13)(D)(i) provides, in pertinent part, that, except as provided by § 1821(d), no court shall have jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver...." Section 1821(d)(6)(A) allows a claimant to file suit

on such claim in a district court, or continue an already pending action in district court, upon expiration of the 180 day review process or denial of the claim by the FDIC. Thus, the FIRREA appears to mandate a stay of proceedings on claims in which the FDIC is the defendant until the FDIC claims process is exhausted.

Several cases have upheld this reading of the FIRREA. In *Tuxedo Beach Club Corp. v. City Federal Sav. Bank,* 737 F.Supp. 18 (D.N.J.1990), the court turned to the legislative history of the FIRREA for support of its decision to stay proceedings pending the exhaustion of the 180 day administrative review process. Specifically, the court in *Tuxedo Beach* focused upon the House Report which contains the following passages:

> The [FDIC's] determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period. A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice. Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim. Resort to ... the District Courts is available only after the claimant has first presented its claim to the FDIC.

H.R.Rep. No. 101–54(I) at 418. 101st Cong., 1st Sess., *reprinted in* 1989 U.S. Code Cong. & Admin.News 86, 214; *See Tuxedo Beach,* 737 F.Supp. at 19. In light of the language of the House Report on the FIRREA, the court in *Tuxedo Beach* concluded that "Congress has determined that these administrative procedures are the most efficient way to resolve the hundreds of claims with which a receiver might be confronted," and granted the FDIC's motion to stay until the claimants had exhausted the FDIC's administrative review process. *Id.* at 20. *Accord Circle Industries v. City Federal Sav. Bank,* 749 F.Supp. 447, 455 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2d Cir.1991) (Per Curiam); *Bank of New England, N.A. v. Michael F. Callahan,* 758 F.Supp. 61 (D.N.H.1991).

The factual background of the present case mandates not only a stay of the defendants' counterclaims, but also a stay of all proceedings in this action. The defendants' counterclaims seek not only money damages but also an order for specific performance of the loan agreement. Separate litigation of the foreclosure action while the counterclaim for specific performance was stayed would deny the defendants the opportunity to fairly litigate their specific performance claims. Thus, the court finds that the order for specific performance is inextricably intertwined with the foreclosure action, and is not amenable to severance. On the other hand, the court must allow the FDIC to review the defendants' counterclaims in accordance with the process established by FIRREA. The only possible reconciliation of the competing interests of the parties at this stage of the litigation is to stay all of the proceedings pending exhaustion of the administrative claims process.[2]

## CONCLUSION

For the foregoing reasons, the defendants' motion to remand (docket no. 12) is DENIED, the FDIC's motion to stay (document no. 7) is GRANTED, and the FDIC's motion to sever the counterclaims (docket no. 6) is DENIED. It is further ORDERED that all proceedings in this action be stayed until the earlier of the following: (1) 180 days have elapsed from the date which the defendants filed their claims with the FDIC; or (2) the FDIC has disallowed the defendants' claims.

---

**2.** Having found that the relief sought by the defendants in the form of specific performance is intertwined with the foreclosure action, the court denies the FDIC's motion to sever.