Ronald J. McDOUGALD, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Liquidating Agent/Receiver of Guaranty–First Trust Company, Defendant.

Civ. A. No. 93–10559–JLT.

United States District Court,
D. Massachusetts.

March 30, 1994.

---

Ronald J. McDougald, pro se.

Paul D. Maggioni, Jr., F.D.I.C., Legal Div., Westborough, MA, for defendant.

## MEMORANDUM

TAURO, Chief Judge.

### I.

### Background

In December 1988, plaintiff Ronald McDougald, trustee for AMT Trust, sold land in Quincy, Massachusetts (the "Property") to John E. Sullivan, trustee for Merrymount Realty Trust ("Merrymount"). To finance the purchase of the land and the development of condominiums on the Property, Merrymount borrowed $3.75 million from Guaranty–First Trust Company ("Guaranty"), and granted Guaranty a first mortgage on the Property. As part of the purchase price, plaintiff received a note from Merrymount, which was secured by a second mortgage on the Property.

In December 1990, Merrymount defaulted on its loan from Guaranty, and shortly thereafter, the condominiums were sold at auction. After the auction, one of Merrymount's creditors instituted litigation against Merrymount and attached the Property. After the attachment was placed on the Property, Guaranty's counsel notified plaintiff that Guaranty would foreclose under its first mortgage on March 22, 1991. Approximately one week before the scheduled foreclosure, plaintiff filed a complaint in Middlesex Superior Court seeking to enjoin the foreclosure of Guaranty's first mortgage. Despite the state court action, Guaranty foreclosed on the Property and was the successful bidder at the foreclosure sale.

Plaintiff has brought suit alleging that Guaranty engaged in misrepresentation and fraud, in violation of Mass.Gen.L. ch. 93A. Although he concedes that he never dis-

cussed the Property with any representatives of Guaranty, plaintiff claims that in January 1991, he met with Merrymount Trustee Sullivan. At that time, McDougald contends that Sullivan made several representations on behalf of Guaranty, which were duly noted in loan committee minutes. Plaintiff contends that he relied upon those representations, which he later discovered to be untrue.

On November 13, 1992, the FDIC was appointed as receiver/liquidating agent of Guaranty. Approximately one month later, on December 11, 1992, the Federal Deposit Insurance Corporation ("FDIC") filed a motion in the state court to substitute the FDIC for defendant Guaranty. The FDIC's motion was allowed on that same day, ninety-four days before the FDIC removed the case on March 15, 1993.

Presently before the court is plaintiff's second motion to reconsider the motion to remand the case to the state court, and the FDIC's motion for summary judgment.

## II.

### *Analysis*

A. *Plaintiff's Second Motion for Reconsideration*

Plaintiff has previously argued that the FDIC untimely removed the case to federal court, and the case should be remanded.

1. Plaintiff filed his motion to remand this case on November 12, 1993. This court denied plaintiff's motion at a conference on November 29, 1993.
   McDougald subsequently filed a motion for reconsideration on December 12, 1993. The court again denied the requested relief in a Memorandum and order. *McDougald v. FDIC*, No. 93–10559 (D.Mass. filed Dec. 21, 1993).

2. Prior to the statute's amendment, 12 U.S.C. § 1819(b)(2)(B) did not contain a removal period. In the absence of a specific removal provision, courts applied the general thirty-day removal period found in 28 U.S.C. § 1446. *See e.g., FDIC v. Greenhouse Realty Associates,* 829 F.Supp. 507 (D.N.H.1993).

3. *McDougald v. FDIC*, No. 93–10559, slip op. at 4 (D.Mass.1993).
   Plaintiff also referred the court to *Woburn Five Cents Savings Bank v. Hicks*, 930 F.2d 965 (1st Cir.1991), a First Circuit decision that he believed supported his argument that the removal period begins upon the FDIC's appointment.

This court has rejected McDougald's argument twice.[1]

As the court has previously noted, in 1991, Congress amended FIRREA to provide a removal period of ninety days.[2] 12 U.S.C. § 1819(b)(2)(B) now provides:

> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court *before the end of the 90–day period beginning on the date the action, suit or proceeding is filed against the Corporation or the Corporation is Substituted as a party.*

12 U.S.C.A. § 1819(b)(2)(B) (1993 Supp.) (emphasis added).

Although plaintiff suggested that the date of the FDIC's appointment should begin the ninety-day period during which the FDIC must remove the case, this court found that argument to be clearly contradicted by the language of the amended statute.[3]

McDougald next observed, that, even if the ninety-day removal period did not begin until the FDIC was substituted into this case, the FDIC's removal was still untimely. As noted in the earlier Memorandum, the FDIC's motion for substitution was filed and allowed more than ninety days before the case was removed. *McDougald v. FDIC*, No. 93–10559, slip op. at 6 (D.Mass.1993). But al-

This court noted, however, that the First Circuit's decision in *Woburn* predated the 1991 amendment. As a result, in *Woburn*, the First Circuit applied the thirty-day removal period in the general removal statute, 28 U.S.C. § 1446(b). *McDougald v. FDIC*, No. 93–10559, slip op. at 5 (D.Mass. Dec. 21, 1993). Using this provision, the First Circuit opted to treat the FDIC as a full party beginning at the time of appointment. *Id.* (citing *Woburn*, 930 F.2d at 969).

This court determined that this part of the First Circuit's decision in *Woburn* was no longer applicable, because the statute had been amended in the interim, and now clearly provides the date on which the ninety-day removal period begins: when an action has been filed against the FDIC as a party or when the FDIC has been substituted as a party. The court concluded that although Congress could have written the amendment to provide that the FDIC could remove ninety days after it was appointed as receiver, it had not chosen to do so.

though this court agreed with McDougald that the FDIC's removal was untimely, this court also found that plaintiff's motion to remand was untimely.[4]

The court observed that when, as here, Congress has not specifically addressed motions to remand in FIRREA, courts usually refer to the general federal removal procedures. *McDougald,* slip op. at 6.

Under 28 U.S.C. § 1447(c), "a motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." As discussed in the earlier Memorandum, an untimely notice of removal constitutes a defect in the removal procedure under 28 U.S.C. § 1447(c). *Datcom v. Integrated Technology, Inc.,* 1993 WL 483258 1993 U.S.App. LEXIS 30528 (1st Cir. Nov. 24, 1993) (*citing FDIC v. Cabral,* 989 F.2d 525, 525 (1st Cir. 1992)). Consequently, this court found that plaintiff should have filed his motion to remand within thirty days after the FDIC improperly removed the case. *McDougald,* slip op. at 7 (*citing Diaz v. McAllen State Bank,* 975 F.2d 1145, 1148 (5th Cir.1992) ("Even if the FDIC's removal had been untimely, the district court still would have been precluded from remanding the case.... Diaz waited almost five months before moving to remand")).

In his second motion for reconsideration, McDougald now argues that he was enjoined from filing his motion to remand for several months because the Supreme Judicial Court entered an automatic stay after the FDIC was substituted as a party. He contends that because the case was stayed until August 12, 1993, and the motion to remand the case was filed on November 12, 1993, he was not any more untimely in seeking a remand than the FDIC was in removing the case. In other words, plaintiff argues that if the FDIC has ninety days in which to re-

move a case, he should also be entitled to ninety days to seek a remand.

Plaintiff also contends that:

The 30 day objection period for general removal cases does not contemplate the types of stays that may be issued in FIRREA cases. Congress did not specifically address the time period in which objections must be raised for procedural defects in remand of FIRREA cases, and the courts should not import the general remand requirements to a situation where they are inappropriate.

Pl.'s Mem.Supp. Second Mot. Reconsid. at 2–3.

But plaintiff does not explain exactly what issues such stays "in FIRREA cases" may raise, nor does plaintiff identify any case authority to support his arguments. On the contrary, the First Circuit has directed that "[i]n the absence of any other specified procedures, logic dictates that FDIC removals continue to be governed by the same general removal principles that govern any other removal." *Woburn,* 930 F.2d at 968; *See also Diaz,* 975 F.2d at 1148; *Greenhouse Realty Associates,* 829 F.Supp. at 510.

This court, therefore, will deny plaintiff's second motion for reconsideration.

### A. The Motion for Summary Judgment

In its motion for summary judgment, the FDIC asserts that McDougald's complaint is based upon his claim that Guaranty breached an oral agreement. More specifically, the FDIC contends that the parties never entered a written agreement. Rather, the FDIC notes that plaintiff's claims are based solely upon the oral representations by Merrymount Realty Trustee Sullivan, the entity that developed the subject condominiums.[5] As a result, the FDIC argues that this claim is unenforceable against the FDIC, pursuant to the *D'Oench* Doctrine, and its

---

4. The court pointed out that although the FDIC removed this case in March, plaintiff waited eight months before filing the motion to remand on November 12, 1993. *McDougald v. FDIC,* No. 93–10559, slip op. at 6–7 (D.Mass.1993).

5. In support, the FDIC refers to *Timberland Design v. First Service Bank for Savings,* 932 F.2d 46, 48 (1st Cir.1991) (affirming grant of summary judgment on *D'Oench* grounds when a developer charged that the bank had made an oral commitment to lend the pltf additional money).

"statutory counterpart"[6] 12 U.S.C. § 1823(e).[7]

McDougald has responded by submitting a copy of the loan committee minutes, which he argues satisfy the writing requirements of 12 U.S.C. § 1823(e).[8] He contends that the minutes (1) were in writing, (2) were approved by the board of directors of the bank or its loan committee as reflected in the minutes of the board or committee, and (3) have been an official record of the bank since it was made.[9]

McDougald suggests that the minutes establish his agreement with Guaranty that the balance of McDougald's second mortgage note would be repaid at a rate of $3000 for each unit sold.[10] According to McDougald, the bank had initially wanted him to waive any payment on the second mortgage loan until the bank was fully repaid. He, however, claims that the parties eventually agreed that he would continue to receive the $3000 for each unit.

The court finds that, under *Resolution Trust Corp. v. Carr*, 13 F.3d 425, 430 (1st Cir.1993), the minutes do not constitute a "writing" as required by the *D'Oench* or § 1823(e). In *Carr*, the First Circuit rejected the use of loan minutes as proof of a writing under *D'Oench*. The First Circuit expressly noted that "the minutes of a bank's executive committee, which merely record the authorization of the Board to the bank's officers to extend a loan on certain conditions, do not constitute a contract between a bank and the borrower."

Similarly, in this case, the submitted minutes simply reflect Mr. Richard Farmer's report to Guaranty's Loan Committee.[11] Consequently, even under the broadest of definitions, the minutes simply cannot be interpreted as written proof of an agreement between Guaranty and McDougald. *Cf. FDIC v. Manatt*, 922 F.2d 486, 489 (8th Cir.1991) (noting that board minutes did not recite that the agreement was attached, set out its terms, or even specifically refer to the defendant). Moreover, McDougald does not claim—nor could he—that he ever executed the loan minutes, as required by 12 U.S.C. § 1823(e)(2).[12]

6. *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1340 (1st Cir.1992).

7. Although the decision in *D'Oench* addressed the situation in which the FDIC was acting in its corporate capacity, it is well established that the doctrine may be applied when the FDIC acts in its capacity as receiver. *Timberland Design v. First Service Bank For Sav.*, 932 F.2d 46, 49 (1st Cir.1991).

8. Under the *D'Oench* Doctrine and § 1823(e), no agreement which tends to diminish or defeat the FDIC's interest in any asset acquired as receiver of an insured depository institution is valid, unless the agreement (1) is in writing, (2) is executed by debtor and the institution, contemporaneously with the acquisition of the asset by the institution, (3) was approved by the board of directors of the bank or its loan committee, as reflected in the minutes of the board or committee, and (4) has been preserved as an official record of the bank. 12 U.S.C. § 1823(e).

9. McDougald argues that the requirement that the agreement be contemporaneously executed with the acquisition of the asset by the bank is inapplicable here because the agreement does not relate to the acquisition of an asset by the bank. The court disagrees.

As part of the alleged "agreement" it appears that McDougald agreed to accept less money at the closing of another condominium unit. It would, therefore, seem that the bank did acquire an assets as a result of this alleged agreement: more money at the closing of the unrelated condominium sale.

10. McDougald had previously received $6000 per unit sold.

11. The relevant committee minutes from January 29, 1991 provide:

Richard Farmer informed the committee that the second mortgagee will be accepting a release fee of $3,000 per unit instead of the original schedule which called for $6,000 per unit. Therefore he will be in until almost the last unit instead of being out when 15 units were sold.

Pl.'s Mem. Opp'n. Mot. Summ. J. Ex. 2.

12. The First Circuit noted that:

Carr reaches for a straw when he attempts to carve out a contract from the corporation minutes. The minute book of a corporation is only a brief record of the corporate proceedings.... Here it is merely an internal record which memorializes authority to the bank's officers to grant an extension of Carr's loan. The minutes, which of course were never 'executed' by Carr, *see* 12 U.S.C. § 1823(e)(2) ... do not purport to be an agreement with him....

*Id.* at 428 (internal citations omitted).

It is plaintiff's burden to establish that the agreement has complied with the requirements of the *D'Oench* Doctrine and § 1823(e).[13] Because the court finds that McDougald has failed to raise a triable issue of fact as to whether he complied with the *D'Oench* requirements, the FDIC's motion for summary judgment will be allowed.

### III.

### *Conclusion*

For the foregoing reasons, plaintiff's second motion for reconsideration will be denied, and defendant's motion for summary judgment will be allowed.

An order will issue.

---

**13.** *See FDIC v. Rivera–Arroyo,* 907 F.2d 1233, 1236 (1st Cir.1990).