955 F.2d 316
 22 Fed.R.Serv.3d 430
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First
Republicbank Dallas, N.A., f/k/a First Republicbank Oak
Cliff, N.A., f/k/a Interfirst Bank Oak Cliff, N.A., and NCNB
Texas National Bank, N.A., Plaintiffs-Appellants,
v.
James A. LOYD, Johnny Barnes, and Bobbie H. Barnes,
Defendants-Appellees.
 No. 90-1714.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 26, 1992.
 
 William Frank Carroll, Bruce L. Collins, III, John M. Nevins, Baker, Mills & Glast, Dallas, Tex., Gregory E. Gore, FDIC, Washington, D.C., for FDIC & NCNB.
 James F. Mobley, Cedar Hill, Tex., for J. Barnes & B. Barnes.
 Appeal from the United States District Court for the Northern District of Texas.
 Before THORNBERRY, JOLLY, and WIENER, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 This case arises from the November 4, 1988, removal of pending state litigation by NCNB Texas National Bank ("NCNB"), and the FDIC, as Receiver of First RepublicBank Dallas, N.A. Twenty-one months later, the district court sua sponte remanded the case to state court, solely on the ground that the original motion for removal was procedurally defective as having not been timely filed pursuant to 28 U.S.C. § 1446(b). On appeal, the FDIC and NCNB argue that the district court did not have the authority sua sponte to remand the case for non-jurisdictional defects after the lapse of the thirty-day limitations period of 28 U.S.C. § 1447(c). In the alternative, the FDIC argues that removal was not procedurally defective because (1) the thirty-day removal period of § 1446(b) does not apply to removal by the FDIC; and, (2) assuming § 1446(b) does apply, removal was timely made within thirty days of its intervention in the state proceeding. Because we find that the district court erred for each of the above reasons, we reverse.
 
 
 2
 * The facts are brief and uncontested. James A. Loyd was an officer of InterFirst Bank Oak Cliff, N.A. InterFirst alleged that in 1972, Loyd, in conspiracy with J. Barnes and B. Barnes (collectively "Defendants"), devised a scheme to steal, and in fact did steal, approximately $490,000 in funds from accounts held by the InterFirst on behalf of its customers.
 
 
 3
 This action was originally filed in the Texas state court over six years ago--on March 8, 1985--by InterFirst against Loyd and the Defendants, asserting claims for breach of trust, conversion, theft and civil conspiracy, and seeking actual damages, injunctive relief, attorneys' fees, and punitive damages. Loyd died a few days before suit was filed. Consequently, on May 1, 1985, InterFirst filed a motion joining the Independent Executrix of Loyd's estate. In September 1987, the Defendants filed an answer, a counterclaim, with respect to InterFirst and a cross-claim against Loyd's estate. Subsequently, judgment was entered against Loyd's estate.[1]
 
 
 4
 On February 8, 1988, the Defendants filed their First Amended Counterclaim against First RepublicBank Oak Cliff, successor to InterFirst. Thereafter, First RepublicBank Oak Cliff was merged into First RepublicBank Dallas, N.A. ("First RepublicBank").
 
 
 5
 On July 29, 1988, the Comptroller of the Currency declared First RepublicBank insolvent pursuant to 12 U.S.C. § 191. On the same date, the Comptroller appointed the FDIC as Receiver of First RepublicBank pursuant to 12 U.S.C. § 1821(c). Also on that date, the FDIC entered into a Purchase and Assumption Agreement with NCNB Texas National Bank whereby the affirmative claims of First RepublicBank against the Defendants were transferred to NCNB. Liability on the counterclaim was retained by the FDIC as Receiver.
 
 
 6
 On September 28, 1988, NCNB made an appearance in the state court action to protect certain property rights and interests, and filed its Fourth Amended Original Petition. On November 4, 1988, the FDIC filed its plea in intervention in the state court action, and on that same date the FDIC and NCNB removed the state court action to the United States district court.
 
 
 7
 Subsequent to removal, the parties to this litigation filed numerous amended petitions and answers, as well as motions for partial summary judgment and responses thereto. On April 27, 1990, the district court entered an order sua sponte raising "the question whether the removal of this action was timely within the meaning of 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1446(b)" and requested letter briefs addressing this issue. On May 21, 1990, the FDIC and NCNB filed their briefs with the court.
 
 II
 
 8
 On August 2, 1990, 744 F.Supp. 126, the district court entered its order remanding this action to state district court. The district court found that the FDIC's and NCNB's removal was untimely and that, despite the applicability of amended § 1447(c), a district court could on its own motion remand a case more than thirty days after removal.
 
 
 9
 In concluding that the removal was untimely and therefore procedurally defective, the district court first held that the procedural requirements of § 1446(b) applied to the FDIC's removal of an action pursuant to § 1819. The district court concluded that the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (1989), did not effect a change in the law with respect to the procedural requirements for removal under § 1819.
 
 
 10
 After having concluded that the procedural requirements of § 1446(b) applied to the FDIC, the district court, relying primarily on its prior decision in Addison Airport of Texas, Inc. v. Eagle Inv. Co., 691 F.Supp. 1022 (N.D.Tex.1988), held that the thirty-day time period for removal commenced on the date the FDIC was appointed Receiver of the failed financial institution. Therefore, because the FDIC was appointed Receiver on July 29, 1988, yet did not remove until November 4, 1988, the district court held that removal was untimely.
 
 
 11
 Having found an apparent procedural defect in removal, the district court next addressed whether a court could remand on such ground after the expiration of the thirty-day period specified in § 1447(c).[2] The district court first considered whether § 1447(c) applied to the pending action, and if so, (1) whether the amendments affected the court's power to raise the issue of remand on its own motion, and (2) whether the thirty-day time limit of § 1447(c) prohibited remand. The district court determined that amended § 1447(c) did apply to the pending litigation, but concluded that § 1447(c) did not prohibit its sua sponte remand.
 
 
 12
 The district court recognized that the thirty-day time limit for filing motions to remand had expired, and that a motion to remand, if filed by a party, would be prohibited by the express language in § 1447(c). However, the district court reasoned that it could remand the case on its own motion even after the thirty-day remand period.
 
 
 13
 Finally, the district court rejected the argument that NCNB was entitled to remove the action, even if the FDIC was not, within thirty days of the FDIC's intervention. The district court concluded that NCNB was also required to remove the action within thirty days after the FDIC was appointed Receiver.
 
 
 14
 On August 30, 1990, the FDIC and NCNB timely appealed.
 
 III
 
 15
 * The actions of the district court in remanding this case present questions of law. Accordingly, we review the district court's conclusions de novo. Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).
 
 B
 
 16
 We must first determine whether we have jurisdiction to review the district court's remand order. Generally, our authority to review a remand order is severely limited by 28 U.S.C. § 1447(d), which provides, in pertinent part, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." The FDIC, however, is specifically exempted from this prohibition by 12 U.S.C. § 1819(b)(2)(C), which provides that "[t]he [FDIC] may appeal any order of remand entered by any United States district court." Accordingly, the FDIC may appeal as a matter of right, and we therefore have jurisdiction to review the district court's remand with respect to the FDIC.
 
 
 17
 NCNB, on the other hand, may not avail itself of this provision. Recognizing this fact, NCNB presents two alternate grounds for our jurisdiction to hear its appeal. First, NCNB argues that its appeal is proper because it was timely filed under Fed.R.App.P. 4(a)(3). Rule 4(a)(3) provides that:
 
 
 18
 If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.
 
 
 19
 Rule 4(a)(3), however, does not grant a party an appeal as of right when it has been forbidden by § 1447(d). The party appealing must have a right before invoking Rule 4(a)(3). See Fed.R.App.P. 4(a)(1) (noting that an appeal must be filed within thirty days "[i]n a civil case in which an appeal is permitted by law as of right"). Accordingly, Rule 4(a)(3) does not present NCNB with a means of circumventing the limitations of § 1447(d).
 
 
 20
 In the alternative, NCNB asks that we treat its notice of appeal as an application for a writ of mandamus. With respect to NCNB's request for a writ of mandamus, we must determine whether the district court exceeded its jurisdiction or "clearly and indisputably abused its discretion." In re Chesson, 897 F.2d 156, 159 (5th Cir.1990). In making this determination, "the party seeking the writ has the burden of proving a clear and indisputable right to it." In re Placid Oil Co., 802 F.2d 783, 786 (5th Cir.1986). The Supreme Court in Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976), held that § 1447(d) does not preclude all review of remand orders. Rather, the Court noted that although subsection (d) of § 1447 prohibits appellate review of remand orders, that subsection must be read in conjunction with subsection (c), which defines the permissible grounds for remand. Id. at 345-46, 96 S.Ct. at 590-91. The Court concluded that a writ of mandamus is an appropriate method for reviewing a remand order, but only in cases where the district judge has clearly "exceeded his statutorily defined powers." Id. at 351, 353, 96 S.Ct. at 593, 594. See also New Orleans Public Service, Inc. v. Majoue, 802 F.2d 166, 167 (5th Cir.1986).
 
 
 21
 Recently, in the companion cases of In re Shell Oil Co., 932 F.2d 1518, 1519 (5th Cir.1991), cert. denied sub nom. Castillo (Gerardo Acuna) v. Shell Oil Co., --- U.S. ----, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) ["Shell Oil (I) "] and In re Shell Oil Co., 932 F.2d 1523, 1525 (5th Cir.1991) ["Shell Oil (II) "], we observed that the application of the Thermtron "exception" has become difficult because § 1447(c) has been amended since Thermtron was decided. See, e.g., Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100-702, 102 Stat. 4642 (1988) ("JIAJA"). Prior to the recent amendments, § 1447(c) provided that, "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case." 28 U.S.C. § 1447(c) (West 1973) (emphasis added). Under this version of § 1447(c), the Thermtron Court held that a district court's remand for reasons other than improvident removal or lack of jurisdiction could constitute an unauthorized remand, and permit appellate review. Thermtron, 423 U.S. at 351, 96 S.Ct. at 593.
 
 
 22
 When Congress amended § 1447(c) in 1988, however, it deleted the reference to "improvident removal." In its place, Congress substituted the phrase "any defect in removal procedure," and added a requirement that motions to remand based on such grounds be made within thirty days. The new version of 28 U.S.C. § 1447(c)[3] now reads:
 
 
 23
 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
 
 
 24
 In Shell Oil (I), we interpreted these changes in § 1447(c) as reflecting "a congressional intent to delete improvident removal as an unreviewable basis for remand, at least when a motion to remand based on such improvident removal is made outside the 30-day time limit." 932 F.2d at 1520. In other words, we held that we have jurisdiction to review a remand order that is premised on a procedural defect in removal and when remand is made after the thirty-day period has passed. Id.
 
 
 25
 The Third Circuit adopted a similar view in Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir.1989). In that case, the court considered whether it could review the district court's sua sponte remand order that was entered seven months after the case was removed and was based on a procedural defect. In reversing the remand order, the Air-Shields court held that:
 
 
 26
 Because the district court's remand decision in this case ... was not based on the "controlling statute," [i.e., amended § 1447(c) ] our review is not limited by subsection (d) of Section 1447. By remanding the case for procedural defects after the thirty day limit imposed by the revised Section 1447(c) had expired, the district court 'exceeded [its] statutorily defined power.' Therefore, the "issuance of the writ of mandamus [is] not barred by § 1447(d)."
 
 
 27
 Id. at 66 (quoting Thermtron, 423 U.S. at 351, 96 S.Ct. at 593).
 
 
 28
 It is important to note that the district court did not suggest that it remanded this case for lack of subject matter jurisdiction. Clearly, a remand for lack of subject matter jurisdiction would fall within the statutorily defined powers granted by § 1447(c), and § 1447(d) would preclude our review of such a remand with respect to NCNB. See Shell Oil (I), 932 F.2d at 1520. The district court, however, recognized that it had subject matter jurisdiction under § 1819(b)(2)(A), which provides, with certain exceptions not relevant here, that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." (Emphasis added). See Carrollton-Farmers Branch Indep. School Dist. v. Johnson & Cravens, 889 F.2d 571, 572 (5th Cir.1989); Triland Holdings & Co. v. Sunbelt Serv. Corp., 884 F.2d 205, 207 (5th Cir.1989).
 
 
 29
 In its August 2, 1990 remand order, the district court remanded the case expressly because of an alleged untimely removal by the FDIC and NCNB. Failure to remove within the thirty-day time limit set forth in § 1446(b) constitutes a "defect in removal procedure" within the meaning of § 1447(c). See, e.g., Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir.1983); see generally Siegel, Commentary on 1988 Revision, 28 U.S.C.A. § 1447(c) (West Cum.Supp.1991). Accordingly, the district court's remand order is unreviewable unless the district court exceeded the scope of its authority under § 1447(c). As we explain in greater detail below, the district court, when it remanded the case on procedural grounds some twenty months after the thirty-day remand period had expired, exceeded its statutorily defined authority under § 1447(c). Consequently, we are not barred by § 1447(d) from reviewing the remand order.[4]
 
 C
 
 30
 Having concluded that we have jurisdiction to review the district court's remand order, we now address the correctness of that order. Almost twenty-one months after the case was removed, the district court, on its own initiative, remanded the case on procedural grounds, stating that the FDIC and NCNB had failed to seek removal within thirty days of the time that the case first became removable, as required under 28 U.S.C. § 1446(b). The district court offered four grounds to support its conclusion that § 1447(c) did not prevent a sua sponte remand of this case: (1) the statute by its terms did not preclude a court from acting sua sponte; (2) the word "motion" did not apply to the court acting on its own initiative; (3) the legislative history of the amendment did not preclude a court from remanding a case sua sponte; and (4) there was no policy reason for limiting the discretion of the court. We are unpersuaded.
 
 
 31
 (1)
 
 
 32
 We begin our analysis of whether an out-of-time sua sponte remand can be allowed by looking to the statute itself. The first sentence of § 1447(c) states, "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." In addressing whether it had the authority to order a remand twenty-one months after removal, the district court conceded that it would not have had the power to remand pursuant to a motion by one of the parties. However, the district court distinguished a sua sponte remand by the court from a remand based on an untimely motion by one of the parties, holding that the plain language of § 1447(c) only prescribes a time limit within which a motion based on a defect must be filed. In reaching this conclusion, the district court stated that "in the civil context presented here ... motions are not normally considered to be an action taken by the court itself," and that "[g]iven the predominant use of the phrase 'own initiative' in the federal civil procedural rules, the term 'motion' in § 1447(c) likely means only a request by the party."
 
 
 33
 A review of the various federal procedural rules, we believe, does not compel the conclusion that the term "motion" in § 1447(c) necessarily excludes actions taken by the court on its own. The various provisions of the Federal Rules of Appellate Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the rules of the Supreme Court all refer, in various circumstances, to actions undertaken by the court as "motions." Consequently, we find that the word "motion" is not dispositive of whether sua sponte remands are subject to the thirty-day limit. We therefore cannot conclude, based solely on the use of the word "motion" in § 1447(c), that Congress intended the thirty-day filing period to be limited to actions by the parties.
 
 
 34
 The only other circuit court to have addressed this issue concluded that the thirty-day period applies to sua sponte actions by the district court. In Air-Shields, Inc. v. Fullam, the Third Circuit held that
 
 
 35
 [e]ven if the district court's sua sponte action qualifies as a motion under the revised 28 U.S.C. § 1447(c), the district court could only remand within 30 days of the filing of notice to remove for procedural defects. Here, the district court issued its remand order more than seven months after the defendant filed its removal petition. Revised Section 1447(c) prohibits such untimely remand.
 
 
 36
 Air-Shields, 891 F.2d at 65 (footnote omitted).[5] We likewise refuse to read § 1447(c) so narrowly as to prohibit the parties from raising procedural defects after thirty days, but not to prohibit the district court from raising such defects on its own initiative. Instead, we interpret the first sentence of § 1447(c) as precluding all remands for procedural defects after the expiration of the thirty-day remand period specified by § 1447(c).
 
 
 37
 (2)
 
 
 38
 Our interpretation that the thirty-day limit applies to both the parties and the district court is supported, if not compelled, by the purpose behind the 1988 amendments to § 1447(c). The House Report, H.R.Rep. No. 889, 100th Cong.2d Sess. 1, 72, reprinted in 1988 U.S.Code Cong. & Admin.News 5982, 6033, states:
 
 
 39
 [Former] [s]ection 1447(c) ... appears to require remand to state court if at any time before final judgment it appears that the removal was improvident. So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuffling a case between two courts that each have subject matter jurisdiction.
 
 
 40
 (Emphasis added). It is clear from this statement that Congress was concerned that the old version of § 1447(c), with its "shall remand" "at any time before final judgment" language, had resulted in unnecessary and burdensome eleventh-hour remands based solely on procedural defects in removal. Congress concluded that procedural defects in removal should not be grounds for shuffling cases between state and federal courts after the first thirty days. Clearly, the very same "burdens of shuffling cases" that are created by a remand based on a motion by one of the parties are created by a sua sponte remand.
 
 
 41
 The purpose of the thirty-day requirement is to ensure that procedural defects be raised, if raised at all, within thirty days of removal in order to ensure timely consideration by the district court, thereby minimizing the burdens on all parties and the courts involved. We recognized this fact in Shell Oil (II), where we emphasized that in amending § 1447(c), Congress desired that remand be handled expeditiously, as reflected in the plain language of § 1447(c): the motion to remand "must be made within thirty days after [removal]." 932 F.2d at 1529 n. 9 (emphasis in original). In other words, what is important about the amended version of § 1447(c) is that procedural questions concerning removal must be presented, whether by motion or sua sponte, within thirty days in order for remand on those grounds to be permissible.
 
 
 42
 Finally, although not specifically addressing the issue before us, this court has previously voiced doubts whether a district court is ever empowered sua sponte to remand a case on procedural grounds:
 
 
 43
 [C]onsidering a motion to remand is both procedurally and substantively different from inquiring into the existence of subject matter jurisdiction. Procedurally, a court may consider remand only if the parties raise the issue; conversely, a court must consider the existence of subject matter jurisdiction on its own motion.
 
 
 44
 Ziegler v. Champion Mortgage Co., 913 F.2d 228, 230 (5th Cir.1990) (emphasis added). Although this statement arguably is dicta, it is nonetheless a precursor for the holding we reach today. See also, e.g., Thermtron, 423 U.S. at 351, 96 S.Ct. at 593 ("we are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute"); Air-Shields, 891 F.2d at 66. But cf. Smith v. City of Picayune, 795 F.2d 482, 484 (5th Cir.1986) ("A federal district court may, on its own motion, consider the correctness of the grounds for removal."); London v. United States Fire Ins. Co., 531 F.2d 257, 260 (5th Cir.1976) ("Thus, even when, as here, jurisdiction exists, the failure to comply with the statutory time requirements is the sort of defect which the District Court was entitled to consider").
 
 
 45
 We thus interpret § 1447(c) as assuring that, after the thirty-day period has expired, neither the state or federal courts, nor the parties, should bear the burdens of shuffling a case between two courts that each have subject matter jurisdiction. The district court is therefore not empowered by § 1447(c) to remand a case because of a procedural defect in removal, sua sponte or on motion of the parties, more than thirty days after removal.
 
 
 46
 (3)
 
 
 47
 The district court voiced its reservation that applying the thirty-day remand period to district judges would force them "to act with unwarranted haste in a factual vacuum." We do not share the district court's concern. Section 1447(c) does not require the district court to rule on the motion within thirty days; it only requires that the issue be raised within that time-frame. Moreover, we can think of no compelling reason for a district court to have any interest in remanding the case for a procedural defect after thirty days, so long as it has subject matter jurisdiction. No one was benefitted by the district court's remand, especially since a motion for summary judgment had been on file and fully briefed for five months. The Defendants could easily have moved to remand the case because of the alleged failure of the FDIC to remove within thirty days. The Defendants chose not to do so, and thereby acquiesced in federal jurisdiction. See Leininger v. Leininger, 705 F.2d at 729. As a result, all parties were clearly before the district court voluntarily. Because there was subject matter jurisdiction, the district court had no valid interest in remanding the case under § 1447(c).
 
 
 48
 We thus conclude that the district court exceeded its statutorily defined authority and erred as a matter of law when it remanded the case. Accordingly, with respect to both the FDIC and NCNB, we vacate the district court's remand order.
 
 D
 
 49
 As an independent basis for reversal, the FDIC argues that the district court erred in concluding that a procedural defect existed in removal. First, the FDIC argues that since the passage of FIRREA, it is no longer subject to the procedural limitations of the general removal statute, 28 U.S.C. § 1446. Second, assuming we find that § 1446 does apply, the FDIC argues further that the district court erred in determining that the thirty-day time limit of § 1446(b) began to run against the FDIC when it was appointed Receiver of the failed institution.
 
 
 50
 (1)
 
 
 51
 This action was removed from the state court by the FDIC and NCNB on November 4, 1988, pursuant to 12 U.S.C. § 1819 (Fourth) (repealed). This statute provided that the FDIC could remove state court cases "by following any procedure for removal now or hereafter in effect." 12 U.S.C. § 1819 (Fourth) (repealed). This "now or hereafter" language was consistently interpreted to mean that removals by the FDIC were subject to the general removal statute, § 1446(b), including the requirement that removal take place within thirty days after the case had become removable. See FDIC v. Brooks, 652 F.Supp. 744, 745 (N.D.Tex.1985).
 
 
 52
 In August 1989, while this litigation was pending, the President signed into law the Financial Institutions Reform, Recovery and Enforcement Act. FIRREA eliminated the "now or hereafter" language from § 1819.[6] The pertinent part of the current version of § 1819 merely states that the FDIC "may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court." 12 U.S.C. § 1819(b)(2)(B) (West 1989).[7]
 
 
 53
 The FDIC presents a series of arguments why the passage of FIRREA does or should prevent the application of § 1446 to the FDIC. First, the FDIC argues that the deletion of the "now or hereafter" language is evidence of Congress's intent that the thirty-day time limit in § 1446(b) no longer apply to FDIC removals. Second, the FDIC argues that the thirty-day limitations period should no longer apply because it would place a tremendous burden on FDIC resources by forcing it to analyze cases within a very short time frame. Finally, the FDIC contends that Congress's deletion under FIRREA of identical language with respect to the Resolution Trust Corporation has been interpreted to mean that § 1446 no longer applies to the RTC.[8] See, e.g., Resolution Trust Corp. v. Key, 733 F.Supp. 1086, 1090 (N.D.Tex.1990).
 
 
 54
 We are persuaded by the First Circuit's reasoning in Woburn Five Cents Savings Bank v. Hicks, 930 F.2d 965 (1st Cir.1991), that § 1446 still generally governs removals by the FDIC. In that case, the FDIC made the same three-pronged argument that § 1446 is entirely inapplicable following the passage of FIRREA. The First Circuit rejected the argument:
 
 
 55
 First, the FDIC's need for additional review time is met by the provision allowing the Corporation to seek a 90-day stay of all actions pending against the insolvent institution. See 12 U.S.C. § 1821(d)(12)(A).... Second, Congress in drafting FIRREA clearly knew how to provide for alternative removal procedures when it deemed them appropriate. The provision in FIRREA governing removal by the RTC prescribes specific time limitations different from those contained in § 1446(b), which also previously applied to the RTC. See 12 U.S.C. § 1441A(l )(3). Congress could have drafted a similar provision for the FDIC if it wished similar treatment for that entity. Third, FIRREA explicitly exempts the FDIC from two general removal requirements, allowing removal "without bond or security" and allowing appeal of a remand order.
 
 
 56
 These specific alterations of the general removal scheme evidence Congress's intent not to create a FDIC removal power under FIRREA wholly independent of that general process. If FIRREA were intended to establish a wholly independent method of removal, there would have been no need for Congress to enumerate these specific exceptions to the general removal provisions.
 
 
 57
 FDIC v. Norwood, 726 F.Supp. 1073, 1075 (S.D.Tex.1989).
 
 
 58
 Finally, we think it inconceivable that Congress, without any explicit statement, intended such a drastic departure from existing practice. The FDIC for years has been required to adhere to the procedures set forth in the general removal statute. If Congress had intended to render that statute inapplicable and to leave FDIC removal procedures up to the discretion of individual judges, surely it would have said so explicitly.
 
 
 59
 Woburn Five Cents, 930 F.2d at 968. See also MTech Corp. v. FDIC, 729 F.Supp. 1134, 1136 (N.D.Tex.1990) ("If Congress had sought to insulate the FDIC from § 1446(b)'s time restrictions, it could have explicitly said so."); FDIC v. Norwood, 726 F.Supp. 1073, 1075 (S.D.Tex.1989) (holding that FIRREA did not relieve the FDIC from complying with the procedural requirements of the general removal statute). We thus conclude that the district court correctly determined that the thirty-day time limitation for removal contained in § 1446(b) applies to removals by the FDIC. This conclusion does not, however, determine the time at which the thirty-day clock begins to run.
 
 
 60
 (2)
 
 
 61
 The FDIC argues that even if the removal clock of § 1446(b) applies to the FDIC's removal, the district court erred by starting it at the time the FDIC was appointed Receiver. The FDIC argues that the clock should have begun to run when the FDIC was joined or intervened in the state court action. The district courts in this circuit that have addressed this issue are split. Compare, e.g., Addison, 691 F.Supp. at 1025 (applying the thirty-day limit from the time of appointment as receiver to an analogous provision involving the FSLIC, 12 U.S.C. § 1730(k)(1)(C)); American Sav. & Loan Ass'n of Brazoria County v. Hoss, 716 F.Supp. 979, 980-81 (S.D.Tex.1989) (FSLIC must remove within thirty days of appointment as receiver); Woodlands II on the Creek Homeowners Ass'n, Inc. v. City Sav. & Loan Ass'n, 703 F.Supp. 604, 606-07 (N.D.Tex.1989) (same), with FDIC v. Brooks, 652 F.Supp. 744, 745 (N.D.Tex.1985) (thirty-day clock does not begin to run until the FDIC formally intervenes or is joined in a state court action); FDIC v. Patton Cotton Co., 652 F.Supp. 742, 743 (N.D.Tex.1984) (same); and FDIC v. Crowe, 652 F.Supp. 740, 742 (N.D.Tex.1984) (same).
 
 
 62
 (a)
 
 
 63
 Title 28 U.S.C. § 1446(b), provides, in pertinent part:
 
 
 64
 If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....
 
 
 65
 The district court, relying on prior decisions construing the timeliness for removal by the FSLIC, noted that "[w]hen the FSLIC is appointed receiver for a failed thrift that is a party to litigation, the first 'paper' that informs the FSLIC that the case is removable is the FHLBB's order appointing it as receiver." See Addison, 691 F.Supp. at 1025. The district court held that the appointment papers of the FDIC as Receiver constituted an "other paper" within the meaning of § 1446(b), and the receipt of those papers started the running of the removal time period.(b)
 
 
 66
 We find it unnecessary to determine whether "other paper" under § 1446(b) includes or excludes the appointment papers of the receiver. The ultimate question we seek to resolve is: When did the case first become removable by the FDIC? Because only the presence of the FDIC in the case provides federal jurisdiction, it would certainly appear that the FDIC first had to be a party before the case was removable to federal court. Common sense and the practicalities of pleading dictate that no non-party to a state court proceeding has a mature right to remove that proceeding to federal court.
 
 
 67
 Additionally, the basis for federal jurisdiction in this case, and thus the basis for removability, 12 U.S.C. § 1819, also supports this unsurprising conclusion. Section 1819 provides that
 
 
 68
 all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States....
 
 
 69
 [The FDIC may] remove any action, suit, or proceeding from a State court to the appropriate United States district court.[9]
 
 
 70
 12 U.S.C. § 1819(b)(2)(A) & (B). These statutory words make it clear to us that the FDIC had a right to remove this case only when it became a party. We recognize that the resolution of when the FDIC may remove is not quite so simple, however, given some of our authority that suggests that the FDIC may enjoy the status of a party before it formally becomes a party. Indeed, our conclusion today that the general removal statutes apply to the FDIC significantly complicates our task.
 
 
 71
 Nevertheless, in this vein, it is clear that limiting the availability of the right to remove a case to the parties in that case accords with the general principles of removal. We cannot imagine that a private person who was not a party to the state court action could nevertheless remove the case to federal court. There is nothing in the removal statutes to suggest such an indiscriminate right.[10]
 
 
 72
 As noted above, we have held today that the general removal statutes apply to the FDIC. Earlier, in our past opinions, we have referred to the FDIC's being bound by the general requirements of the removal statute in the same manner as other parties. This maxim, however, has been honored as much in the breach as in the application. See Farina v. Mission Investment Trust, 615 F.2d 1068, 1075 (5th Cir.1980) (holding that it was within the district court's discretion to treat FDIC's motion to remove as a motion to intervene); North Miss. Sav. & Loan Ass'n v. Hudspeth, 756 F.2d 1096, 1100 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986) (holding that although FSLIC had not been formally joined as a party, it was a party after it filed a motion in state court, and then removed the case to federal court).
 
 
 73
 Nevertheless, we have never suggested that the FDIC has some cognizable status as a party in the state court case unless the FDIC has had at least some contact with the state court action.[11] Or, stated another way, we have never suggested that the FDIC was a cognizable § 1446 party in the state court case in the absence of some appearance by the FDIC in that proceeding.
 
 
 74
 Today, we hold that the FDIC cannot be considered a party for the purposes of § 1446(b) until it has made an appearance, voluntary or involuntary, in the state court case. In other words, in an effort to be consistent with our authority that the general removal statute applies to the FDIC, we hold that the FDIC must make some appearance in the state court case before the thirty-day removal clock may run against any party.[12] Thus in this case, the FDIC did not become a "defendant" for the purpose of starting the thirty-day removal clock of § 1446(b) until it filed its motion to intervene, which, in this case, is the § 1446 document that started the clock.
 
 
 75
 Because there was no basis for any other party to remove the case until the FDIC became a "party," see 12 U.S.C. § 1819, the thirty-day period began to run against all parties who may be entitled to remove under § 1446(b), upon receipt of the FDIC motion to intervene.
 
 
 76
 (c)
 
 
 77
 Our holding that the removal clock begins to run when the FDIC makes an appearance in the state court may conflict with recent cases in the First[13] and Eleventh[14] Circuits.[15] Those circuits have held that the § 1446(b) removal clock runs against the FDIC at the time the FDIC is appointed as receiver of a party. We are unpersuaded.[16]
 
 
 78
 In the first place, and most importantly, the Woburn Five Cents- Lazuka approach disregards the statutory language of § 1446 and 12 U.S.C. § 1819 that makes clear that some party-status of the removing party is critical. The mere fact that the FDIC has been appointed a receiver of a party in the state court proceeding does not make the FDIC a party to that proceeding.[17] Consequently, under the Woburn Five Cents- Lazuka approach, the time to remove starts running against a non-party to the proceeding who actually has no right to remove. Our approach, which attempts to be as faithful to the statutes as the exigencies will allow, is to be much preferred to disregarding those statutory terms. It certainly does less mischief to private party litigation under § 1446 than precedent that makes § 1446 applicable to non-parties.
 
 
 79
 Furthermore, our approach starts the running of the clock from one event: the FDIC's appearance into the proceeding. The First Circuit, on the other hand, starts the clock at different times, depending upon the party. The clock runs against the FDIC when it is appointed receiver, and against all other parties when the FDIC enters the state action. Woburn Five Cents, 930 F.2d at 970. If that rule had applied in this case when NCNB and the FDIC sought removal, the removal clock would have run against the FDIC (because more than thirty days had elapsed since its appointment as Receiver), but not against NCNB or any other party (because only one day had elapsed since the first appearance by the FDIC). This result needlessly differentiates the procedural rights of the parties and frustrates the litigation.
 
 
 80
 We believe that our approach is also a more practical means to accomplish the tasks Congress has set for the FDIC. When a large bank is placed into receivership, it might then be party to hundreds of lawsuits. It is not in the public interest to require the FDIC to determine the best management for every single pending case in a total of thirty days or otherwise to forego its right to a federal forum. The FDIC simply may not be able to inventory a bank's pending cases within thirty days of becoming receiver. By the time the FDIC determines that it is in the public interest to remove a given case, thirty days might well be past.
 
 
 81
 Finally, we do not share the concern of the First Circuit that the FDIC might "lie behind the log," only later to enter the case unfairly and remove it, to the detriment of the other parties. Woburn Five Cents, 930 F.2d at 971. The opposing party can force the FDIC's hand at any point in the proceeding by exercising its option of bringing the FDIC into the case.
 
 E
 
 82
 We turn now to review briefly the removal by NCNB. The district court assumed that the removal clock began to run against all parties at the time of the FDIC's appointment as receiver. Therefore, the court held that NCNB was as untimely as the FDIC in its removal.
 
 
 83
 NCNB has a right of removal independent of the FDIC's right. Section 1819 authorizes removal by any party to litigation entered by the FDIC, not just the FDIC. See FDIC v. Otero, 598 F.2d 627, 630-31 (1st Cir.1979); In re Franklin Nat'l Bank Sec. Litig. v. Andersen, 532 F.2d 842, 845-46 (2d Cir.1976). For the reasons we discussed above, this case was not removable until the FDIC filed its motion to intervene on November 4, 1988. Following section 1819, any party could then remove the case within thirty days of the time it received notice that the FDIC had entered the case and it had become removable. Accordingly, because NCNB removed the case on November 4, the district court erred in holding that NCNB's removal was not timely.
 
 IV
 
 84
 We now sum up. We have held that this court has jurisdiction to review the district court's remand because the court exceeded its statutory authority by remanding the case sua sponte for procedural defects in the removal later than thirty days after the removal. We have also held that removal was proper because the time in which the FDIC could remove commenced on the day the FDIC entered the state court action; the time in which NCNB could remove began to run from the time of its notice that the FDIC was in the state court action, and both the FDIC and NCNB timely removed on the same day the FDIC entered the state court action. We stress that our holdings are on alternative grounds; that is, the district court's sua sponte remand after twenty-one months and its error in calculating when the thirty-day time limit began to run against the FDIC and NCNB provide independent grounds for our reversal. Accordingly, construing NCNB's notice of appeal as a petition for writ of mandamus, the petition is GRANTED; the district court's remand order is VACATED, and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 85
 VACATED and REMANDED.
 
 
 86
 THORNBERRY, Circuit Judge, concurring in part, dissenting in part:
 
 
 87
 I concur with most of the thoughtful and well-reasoned analysis of my colleagues in the majority, but I must respectfully dissent from sections III(D)(2) and III(E) of the opinion.
 
 
 88
 Unlike the position taken by the majority in section III(D)(2), I believe that the district court correctly ruled that the thirty-day limitations period for removal under the general removal statute, 28 U.S.C.A. § 1446(b) (West Supp.1991), began to run against the FDIC when it was appointed as receiver for the failed bank in this case. I believe that this date also marked the running of the limitations period for the FDIC's co-plaintiff in this case, NCNB Texas National Bank ("NCNB"), and, therefore, I also dissent from section III(E) of the majority opinion.
 
 
 89
 The controlling statute, 28 U.S.C.A. § 1446(b) (West Supp.1991), states, in relevant part, that
 
 
 90
 [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
 
 
 91
 This provision provides that when some occurrence or discovery transforms a case from one that was thought to be non-removable into a case that is removable, the limitations period will begin anew at the point in time when "the defendant receives actual notice that the case has become removable, which may be communicated in a formal or informal manner." 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3732, at 519-20 (1985); see also American Sav. & Loan Ass'n v. Hoss, 716 F.Supp. 979, 981 (S.D.Tex.1989) (noting that one of the purposes of section 1446 is to provide actual or constructive notice to those parties who would not otherwise be aware that the nature of the litigation had changed in such a way as to make a case removable).
 
 
 92
 Although the pleadings in this lawsuit originally may not have stated a cause of action that was removable, the appointment of the FDIC as a receiver transformed the pleadings into an action that stated a removable claim based on the simple fact that the FDIC had now become a party to the lawsuit. See 12 U.S.C.A. § 1819(b)(2)(A) (West 1989) (providing that all suits "to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States") (emphasis added); FDIC v. Otero, 598 F.2d 627, 630-31 (1st Cir.1979) (providing that any defendant including the FDIC may seek removal of a case to which the FDIC is a party). The FDIC became a party to this action upon its appointment as a receiver for the failed commercial bank; formal intervention or joinder of the FDIC was unnecessary. See Federal Deposit Ins. Corp. v. Condit, 861 F.2d 853, 856 (5th Cir.1988); Mississippi Sav. & Loan Ass'n v. Hudspeth, 756 F.2d 1096, 1100 (5th Cir.1985), overruled on other grounds, Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp., 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989); Farina v. Mission Investment Trust, 615 F.2d 1068, 1074-75 & n. 19 (5th Cir.1980); see also Henry v. Independent Am. Sav. Ass'n, 857 F.2d 995, 998 (5th Cir.1988) (noting that under similar circumstances, the FSLIC is a party to a suit when it is present as a receiver). The involvement of the FDIC as a party to the litigation altered earlier encumbrances to removal, and transformed the original pleadings into pleadings which were now removable. No amended pleadings, motions, orders or other papers were necessary to achieve this result.
 
 
 93
 "The fundamental principle of the general removal statute is that the time limitation on seeking removal begins to run when defendant receives notice of the action." C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3732, at 513 (1985). Once the FDIC became a party to the litigation by virtue of its appointment as receiver of Republic Bank, it was on notice that the pleadings stated a removable cause of action, and the statute of limitation should have commenced to run. This result is consistent with the result reached by several district courts within our own circuit. See FSLIC v. Browning, 732 F.Supp. 690, 691 (N.D.Tex.1989); FDIC v. Norwood, 726 F.Supp. 1073, 1075-76 (S.D.Tex.1989); American Sav. & Loan Ass'n of Brazoria County v. Hoss, 716 F.Supp. 979, 980-81 (S.D.Tex.1989); Woodlands II v. City Sav. & Loan Ass'n, 703 F.Supp. 604, 606-07 (N.D.Tex.1989); Addison Airport v. Eagle Inv. Co., 691 F.Supp. 1022, 1025 (N.D.Tex.1988).[1]
 
 
 94
 Given that the purpose of section 1446 is to provide actual or constructive notice to those parties who might not otherwise know that a case had become removable, it was not an abuse of discretion for the district court to find that NCNB's thirty-day limitation period also commenced on the date that the FDIC was appointed as a receiver. The day that the FDIC was appointed as receiver for the failed Republic Bank in this case was also the date on which the FDIC entered into a Purchase and Assumption Agreement with NCNB whereby NCNB assumed the affirmative claims for Republic against the defendants. Since NCNB was dealing with the FDIC in this matter, it was put on notice that the action was removable, and, therefore, the thirty-day limitations period began to run against them. The district court's determination in this regard should have been affirmed.
 
 
 
 [1]
 The record is unclear as to whether judgment was actually ever entered against Loyd's estate, or whether any judgment was on the original claim or the counterclaim. At oral argument, counsel for the Defendants suggested that a judgment had been obtained but never executed
 
 
 [2]
 Section 1447(c) provides, in pertinent part, that:
 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
 
 
 [3]
 The amendments to § 1447(c) were passed on November 19, 1988, while this litigation was pending. Although the JIAJA does not specify an effective date for the amendments to § 1447(c), the district court correctly held that the 1988 amendments to § 1447(c) applied to this case. See Shell Oil (II), 932 F.2d at 1526
 
 
 [4]
 The court in Shell Oil (I) noted that
 Under new § 1447(c), remand orders based on lack of subject matter jurisdiction are clearly unreviewable. Arguably, remands based on timely motions to remand for a "defect in removal procedure" may also be unreviewable under the new statute. However, because the remand motion in this case was untimely, we need not decide whether remands based on timely motions would be unreviewable.
 932 F.2d at 1520. Similarly, we do not reach this question because the remand came twenty-one months after removal. We also leave for another day the question of whether, in the light of the use of the word "motion" in new § 1447(c), a sua sponte remand by the district court within 30 days would be reviewable.
 
 
 [5]
 The district court relied upon the case of Smith v. MBL Life Assurance Corp., 727 F.Supp. 601 (N.D.Ala.1989). That case involved a remand under § 1446(b), which precludes removal on "the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." 28 U.S.C. § 1446(b). In remanding the case more than thirty days after removal, the court said, "[t]his court is unconvinced that plaintiff's motion is presented only 'on the basis of [a] defect in removal procedure.' " Smith, 727 F.Supp. at 603. Rather, "this court recognizes the right of Congress ... to limit the jurisdiction of federal courts." Id. (emphasis added). The court further stated that "there is no logical reason why the case cannot be remanded sua sponte at any time after thirty (30) days, with or without a motion having been filed by the plaintiff." Id. at 604. We refuse to adopt the dicta in Smith
 
 
 [6]
 The amended version of 12 U.S.C. § 1819(b)(2) provides:
 Federal court jurisdiction
 (A) In general
 Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
 (B) Removal
 Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.
 
 
 [7]
 As a preliminary matter, we need to decide whether the amended version of § 1819 or the old version should apply to this pending litigation. The district court did not decide this issue because it believed that the result was the same under each version of the statute. Nonetheless, we hold that the amended version of § 1819 is applicable to this appeal. See Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); Triland Holdings & Co. v. Sunbelt Serv. Corp., 884 F.2d 205, 207 (5th Cir.1989)
 
 
 [8]
 Like the FDIC, the FSLIC, which was the predecessor to the RTC, was allowed to remove cases from state to federal court prior to passage of FIRREA "by following any procedure for removal now or hereafter in effect." 12 U.S.C. § 1730(k)(1)(C) (West 1989) (repealed). As with the applicable language for the FDIC, following the passage of FIRREA this language was deleted. See 12 U.S.C. § 1441a(l )(3) (West Supp.1991)
 
 
 [9]
 This removal authority extends to all parties when available to the FDIC. See section E, infra
 
 
 [10]
 The creation of federal question jurisdiction by the entry of the FDIC into a case presents the unusual circumstance of requiring discussion of removal by "parties" rather than "defendants." Under ordinary circumstances, only the defendant(s) may remove. See 28 U.S.C. § 1446(a); American International Underwriters, (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1260 (9th Cir.1988). However, the FDIC as a party "in any capacity," 12 U.S.C. § 1819, enjoys the right to remove
 
 
 [11]
 Dicta in one case seems to suggest that when the FDIC, as receiver, is a real party in interest, it can acquire party status without formal entry into the case or without otherwise having filed some paper. FDIC v. Condit, 861 F.2d 853, 856 (5th Cir.1988) (Court had discretion to deny defendants' motion to join FDIC-Receiver, where defendants failed timely to object to the substitution of FDIC-Corporate for bank that was the plaintiff). Even the dicta in Condit, however, does not declare that there is no difference between a real party in interest and a formal party
 
 
 [12]
 The opinion we reach today is consonant with both the maxim to which we have tried to adhere--the general removal statute applies to the FDIC--and to the exceptions that we have made that tend to contradict that maxim. Attempting to reconcile, on the one hand, our commitment to applying the removal statute to the FDIC, and our recognition, on the other hand, that the FDIC is truly an exceptional entity in the application of the statutes, renders it very difficult faithfully, yet practicably, to apply § 1446 to cases such as this. For example, § 1446 speaks in terms of the removal rights of defendants, which is appropriately worded as applied to private parties. The FDIC, however, may often be the plaintiff, as it is in this case, yet § 1446(b) speaks in terms of receipt by the defendant of papers, motions, etc. Because of the inconsistent applicability of § 1446 to litigation involving the FDIC, the courts have been forced to draw from § 1446 selectively to determine the parameters of how, when, and who may remove cases in which the FDIC is a party. In re Franklin Nat'l Bank Sec. Litig. v. Andersen, 532 F.2d 842, 845-46 (2d Cir.1976). Our rationale in this case is driven in part by our belief, and certainly our hope, that we are having a less deleterious effect on § 1446 in its application to private party litigation than we would if decided on one of the other bases suggested by the briefs and cases from other circuits. For example, if we should hold that the § 1446 clock begins to run on the FDIC, a nonparty, at the time it was notified of the receivership, that holding could rob a private nonparty, who was also notified, of the right to remove when it later is made a defendant. In short, it should be clear, as a general principle, that the right to remove a case does not mature, or even come into being, until one claiming the right has become a party to that case
 
 
 [13]
 In Woburn Five Cents, the FDIC obtained a stay in the state court case shortly after its appointment as receiver. The stay excepted "the right of [the FDIC] to remove." The FDIC petitioned for removal three months later. The First Circuit held that the removal clock started upon the appointment of the FDIC as receiver, not by some later filing of a "paper" in the state court proceeding. 930 F.2d at 969. Woburn Five Cents distinguished, but did not overrule, FDIC v. Otero, 598 F.2d 627, 633 n. 7 (1st Cir.1979) ("case was not 'removable' until the FDIC actually intervened")
 
 
 [14]
 Lazuka v. Federal Deposit Ins. Corp., 931 F.2d 1530, 1537 (11th Cir.1991) (30-day period begins to run upon FDIC's receipt of notice that it has been appointed receiver); In re Savers Federal Sav. & Loan Ass'n, 872 F.2d 963, 964 (11th Cir.1989) (per curiam) (FSLIC became a defendant under § 1446(b) on the day it was appointed conservator)
 
 
 [15]
 But see Kirkbride v. Continental Cas. Co., 933 F.2d 729, 733 (9th Cir.1991) (rejecting contention that thirty-day period began to run against FDIC on the date that FSLIC was appointed as receiver, because "FDIC was not a party at that time, was not participating in the litigation in any manner, and was without authority to petition the court until it was made a party")
 
 
 [16]
 We note that the courts in Woburn Five Cents and in In re Savers (and thus Lazuka ) wrongly relied upon our opinion in North Mississippi Sav. & Loan Ass'n v. Hudspeth, 756 F.2d 1096 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). Hudspeth was interpreted through brief citation to represent a holding that the FSLIC became a party to that case upon its appointment as receiver. See Woburn Five Cents, 930 F.2d at 969-70; In re Savers, 872 F.2d at 964. This interpretation was an oversimplification
 We found in Hudspeth that the FSLIC was a party in a state suit after the FSLIC filed a motion to dismiss claims against the bank in receivership, even though the FSLIC had not been formally joined, citing Farina v. Mission Investment Trust, 615 F.2d 1068, 1075 (5th Cir.1980) (FDIC motion to remove treated as motion to intervene). Our rationale in both cases was to avoid contravention of Fed.R.Civ.P. 8(e)(1) and 8(f) by requiring excessively technical pleading requirements. Hudspeth, 756 F.2d at 1100; Farina, 615 F.2d at 1074.
 
 
 [17]
 "Merely by virtue of his or her appointment, a receiver does not become a party to a pending action against the corporation for whose property he is appointed receiver. Furthermore receivers need not be made parties to pending suits against the corporation, nor be substituted as defendants." C.R. Keating & C.R. Miller, 16 Fletcher Cyclopedia of the Law of Private Corporations 446 (1989)
 
 
 [1]
 The majority cites only three cases from our circuit that are consistent with its holding that the statute of limitations does not begin to run until the FDIC officially intervenes in a state action. See Majority Opinion at 325 (citing FDIC v. Brooks, 652 F.Supp. 744 (N.D.Tex.1985); FDIC v. Patton Cotton Co., 652 F.Supp. 742 (N.D.Tex.1984); FDIC v. Crowe, 652 F.Supp. 740 (N.D.Tex.1984)). All three of these opinions were written by the same judge, and all three opinions rely to some extent or another on the First Circuit opinion of FDIC v. Otero, 598 F.2d 627 (1st Cir.1979), which held that the timing of the thirty-day limitations period began at the time that the FDIC officially intervened in the subject action. This reliance on Otero has recently been undercut by another First Circuit opinion, Woburn Five Cents Savings Bank v. Hicks, 930 F.2d 965 at 969 (1st Cir.1991), which has disavowed any suggestion that Otero applied to the FDIC in its role as a receiver:
 Whatever the continuing strength of Otero ... we think the more reasonable approach is to treat the FDIC as a full party as a matter of law at the time of appointment since, at that time, the bank ceases to operate independently. Such an approach recognizes that it is at the time of receivership that the case is transformed into "one in its nature removable," Powers v. Chesapeake & Ohio Railway, 169 U.S. 92, 98 [18 S.Ct. 264, 266, 42 L.Ed. 673] (1898), and that delaying the effect of the change until formal substitution of parties has taken place would be to elevate form over substance.